WILLIAM SOHIER & another *vs.* SARAH M. BURR & others.

Suffolk.   March 19. — July 26, 1879.   AMES & LORD, JJ., absent.

A testator, living in this Commonwealth, directed that the income of a certain fund, accumulated under the provisions of his will, should be paid annually by trustees acting under the will " to such person or persons as shall from time to time be appointed by the judge of probate for the time being " in a district in Connecticut, " to take, receive and distribute the same among the poor meritorious widows living and belonging within the limits of " an ecclesiastical society of a town in the above district. He further directed that, if from any cause it should appear that the objects for which the fund was created could not be accomplished, or that the income of the same was not applied conformably to the provisions of the will, the fund should lapse into and become part of the residue of the estate. In 1872, the fund having accumulated to the amount required by the will, the trustees made oral application to the judge of probate for the district named, for the appointment of a person to receive and distribute the income thereof, according to the provisions of the will. No notice of this application was given to the ecclesiastical society, or to any of the beneficiaries named, and the judge declined to act on the ground of want of jurisdiction. Five years afterwards, the then judge of probate, upon the filing of a certified copy of the will, appointed an almoner under the provisions in question. In the following year, the Legislature of Connecticut confirmed the appointment, and gave express power to the judge of probate in the premises. *Held*, that the charitable bequest was valid, and had not been defeated by the delay in the appointment of an almoner.

A trustee under a will cannot maintain a bill in equity for instructions, in the nature of a bill of interpleader, upon a question relating to the past administration of his trust.

BILL IN EQUITY in the nature of a bill of interpleader, by the trustees under the will of Henry Farnum, to obtain the instructions of the court as to the validity of a charitable bequest in the will, and as to a matter arising out of their administration of the trust.

The case was heard on the bill and answers by *Colt*, J., and reserved for the determination of the full court. The facts appear in the opinion.

*F. C. Welch*, for the plaintiffs.

*L. Mason*, for one of the life tenants.

*R. Olney*, for the remaindermen and others.

*G. M. Browne*, in support of the charitable bequest.

COLT, J. The will of Henry Farnum, a resident of this Commonwealth, directs that the income of a certain fund accumulated under its provisions " shall be paid annually by the trustees, acting under the will, to such person or persons as shall, from time to time, be appointed by the judge of probate for the time being in the district of Norwich in the state of Connecticut, to take, receive and distribute the same among the poor meritorious widows, living and belonging within the limits of the First Ecclesiastical Society of the town of Norwich and district aforesaid." It further provides that, if from any cause it shall appear that the objects for which this fund is created cannot be accomplished, or that the income of the same is not applied conformably to the provisions of the will, then the fund shall lapse into and become part of the residue of the estate.

The trustees entered upon their duties in 1852; and, in 1872, the widows' fund having accumulated to the amount required by the will, they made oral application in Connecticut to the judge of probate for the district named, for the appointment of a suitable person to receive and distribute the income thereof, according to the provisions of the will. No notice was given of this application to the First Ecclesiastical Society, or to any of the beneficiaries named, and the then judge of probate declined acting in the premises, alleging want of jurisdiction. In 1877, however, after this bill was filed, the present judge of probate for that district, upon the filing of a certified copy of the will, proceeded to appoint the defendant Rudd a trustee under the provisions in question; and, in the following year, the Legislature of Connecticut confirmed the appointment, and gave express power to the judge of probate in the premises.

In behalf of the residuary legatees it is contended that, by the terms of the will, and under the circumstances here stated, the charitable bequest fails, and the funds become part of the residue

of the estate. But, as it was said in the recent case of *Fellows* v. *Miner*, 119 Mass. 541, 544, "the fact that a charitable bequest, otherwise valid, cannot take effect immediately, for want of proper objects or trustees, or of enabling acts of the Legislature or of the Executive, will not defeat it." There is nothing in the case from which it yet appears, in the language of the will, that the objects for which the fund was created cannot be accomplished, or that the income of it will not be applied conformably to its provisions. The delay here occurring in the appointment of an almoner is not enough. It occurred without the fault of the beneficiaries, or of any one interested in upholding the charity, who it appears were all ignorant of its existence. The testator must have contemplated more or less delay. The income of the accumulated fund is still in the hands of the trustees named in the will, and there has been no misapplication of it which should work a forfeiture. The bequest is valid, although the beneficiaries reside in another State. And the court will not allow a valid charitable trust to fail for want of a trustee. The law as laid down in *Fellows* v. *Miner*, and the cases there cited, governs this part of the case; and the charitable bequest must be adjudged valid.

But there is joined in this bill another and distinct matter, arising out of the administration of the other trusts created by this will, upon which the trustees also pray for instructions, and ask that the respondents may be required to interplead.

By the terms of the will, the residue of the estate is held by the same trustees in trust to pay the income thereof to the children of the testator for life, and the principal on their death to their children or heirs. The estate consisted wholly of real estate in Boston, in the management of which the trustees were given full power to sell and convey, and invest the proceeds, at such times and in such manner as they might deem expedient, with the same power of disposition and management as the testator himself possessed when living. It happened that, by the widening of Federal Street in Boston, in the first instance, and afterwards by the destruction of the buildings in the great fire of 1872, it became necessary, in order to render a valuable part of the real estate productive, to erect new buildings upon it. The trustees thereupon sold portions of the estate, including the lot

on Federal Street, to a third person, who mortgaged the same back, and then conveyed it to the trustees, subject to the mortgage, in consideration of the agreement of the trustees to protect him from the payment of his mortgage notes by appropriating to a sinking fund for that purpose all increase of rents realized in consequence of such improvements. It was a scheme for securing income from unproductive trust property, of which an essential and necessary feature was the application of a part of the income of the improved property to the payment of the loan by means of which the improvement was made. One of the children of the testator now contends that she is entitled to have one third of the income of the estate on Federal Street paid to her, without the deduction of any part thereof as a sinking-fund for the discharge of incumbrances; and that the plan adopted by the trustees enures to the benefit of the owners of the reversion, to the prejudice of the life tenants, and should therefore be disregarded.

This is a question which relates to the past administration of a trust in respect to that which was wisely confided to the judgment and discretion of the trustees named; and with reference to which the judgment of the court cannot be substituted for the discretion of the trustees reasonably and fairly exercised. *Proctor* v. *Heyer*, 122 Mass. 525.

If the plan adopted by the trustees for realizing income from the estate was within the lawful exercise of the power conferred upon them by the will, then the life tenant has no just ground of complaint on account of the apportionment of the income, which by the terms of the agreement with a third person was required to be retained for his security. The question whether there has been an abuse of the trust is one in which the trustees have a direct personal interest, and which cannot be tried and settled in a bill in the nature of a bill of interpleader, brought by them for the purpose of obtaining the advice and protection of the court in the execution of their trust.

It is not a dispute between parties having conflicting claims arising out of the doubtful construction of the terms of the will. The plaintiffs are in no sense stakeholders, having no interest in the subject-matter, and who have incurred no independent liability to either claimant. The principle on which courts of equity afford relief and protection to trustees in the execution of their

trust does not apply when the alleged conflicting claims grow out of the past management of the trust, and involve an inquiry into the validity of such management.

In *Minot* v. *Paine*, 99 Mass. 101, cited by the plaintiffs, the bill was for instructions as to whether certain shares of new stock issued by a railroad corporation as a stock dividend upon stock owned by the testator at the time of his death were to be treated as income or dividend. The question arose out of an act of the railroad corporation, not contemplated by the testator, in its effect upon the provisions of the will, and came fairly within the jurisdiction of the court.

In *Salisbury Mills* v. *Townsend*, 109 Mass. 115, a bill of interpleader was maintained to determine to which of two parties, claiming to hold shares of stock in the plaintiff corporation, a dividend which was then due belonged, but not to determine the question whether the corporation was liable to one of the parties who claimed to have been defrauded of his stock. It was said that the dividend which was the specific fund in controversy was not affected by the question whether the plaintiffs were so liable, and must be treated as a fund in which they had no beneficial interest, and which was claimed by the two defendants; but that the question whether the corporation by its own wrongful act had made itself liable to the owner of the stock could not be tried upon that bill. See also *Dimmock* v. *Bixby*, 20 Pick. 368; *Treadwell* v. *Cordis*, 5 Gray, 341; *Treadwell* v. *Salisbury Manuf. Co.* 7 Gray, 393; Adams Eq. 202; 2 Story Eq. Jur. § 800.

Upon an amendment of the bill by striking out the part thus improperly joined, the entry must be

*Decree in favor of the charity.*