LAURENCE MINOT, trustee, *vs.* GEORGE PURRINGTON, JR., administrator, & others.

Norfolk.    December 4, 5, 1905. — February 27, 1906.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Devise and Legacy,* Construction.    *Judgment.    Probate Court.    Equity Jurisdiction,* Bill for instructions.    *Trust.    Executor and Administrator.*

A will contained the following provision: "I direct my said trustees to pay in like manner, one quarter part of the nett income of said residue and remainder to the children of my deceased son H. during their natural lives, to be paid to them severally, half yearly, or oftener if convenient to my trustees, on their personal receipts, or their guardians and in case any of said H.'s children decease without issue, the share of such deceased child to go to the survivors, and upon the decease of my said son H.'s children I direct that one quarter part of the residue and remainder of my estate be distributed among his grandchildren, such grandchildren representing their parents and receiving their shares as they respectively attain the age of twenty one years and in the mean time to receive the income of their respective shares." *Held,* that the interests of the grandchildren of H. vested on the death of the testator, subject to being lessened by the opening of the remainder to let in after born grandchildren, and that the interests thus vested in the grandchildren included their vested interests in the contingent remainders which would accrue to them on the death of any of H.'s children without issue.

On a bill by a trustee under a will for instructions as to the distribution of a fund in his hands, it appeared that the fund accrued under a provision of the will upon the happening of a certain contingent event, and that many years before on the happening of a like contingent event a distribution under the same clause of the will had been made under a decree of the Probate Court, which omitted from the distribution certain persons entitled to share in it, that at the hearing of the former bill for instructions on which the decree was made the persons omitted from the distribution were living in a foreign country and had no knowledge of the proceedings, but that before the decree was made general notice was given by publication in accordance with law and the rules of the court, and also that the executor of the will under which the excluded persons claimed received notice of the petition and joined in a request that the distribution should be made as ordered by the decree. *Held,* that the former decree of the Probate Court was conclusive upon the parties in regard to the fund distributed under it, and that the payments made under it could not be interfered with, but that the decree had no effect upon the rights of the parties to funds accruing after it was made, and that subsequent payments, distributed erroneously through a misunderstanding by the parties of their rights, should be adjusted in making the present distribution, (all parties interested being before the court, there being no laches, and all claims for income being waived,) by deducting the overpayments and giving the amount of them to the persons wrongly omitted.

In the distribution of a fund held by a trustee under a will, if it appears that one

of the persons whose estate is entitled to share in the distribution, who was the owner of a vested remainder and of a vested interest in contingent remainders, died, at the age of two years, more than forty-seven years before the distribution, leaving his father as his only heir at law and next of kin, and that an administrator of the estate of the infant then was appointed and since has died, it is not necessary that an administrator *de bonis non* of the infant's estate should be appointed, and the payment of his share may be made directly to the administrator *de bonis non* with the will annexed of his father.

BILL IN EQUITY, filed in the Probate Court for the county of Norfolk on April 30, 1903, by the trustee under the will of William Taylor, formerly of Roxbury, for instructions.

On appeal from a decree of the Probate Court the case came on to be heard before *Hammond*, J., who reserved it upon the bill and answers and an agreed statement of facts for determination by this court. The material facts appear in the opinion.

*F. Brewster*, for the trustee.

*M. R. Hitch*, (*F. M. Sparrow* with him,) for the administrator with the will annexed of Ansel Weeks, Jr., and for the widow and children of Ansel Weeks, Jr.

*W. H. Dunbar*, for Anne Ashton Warren and others.

KNOWLTON, C. J. The will of William Taylor, late of Roxbury, who died in 1858, contains a provision as follows: "And I direct my said trustees to pay in like manner, one quarter part of the nett income of said residue and remainder to the children of my deceased son Henry Taylor during their natural lives, to be paid to them severally, half yearly, or oftener if convenient to my trustees, on their personal receipts, or their guardians and in case any of said Henry's children decease without issue, the share of such deceased child to go to the survivors, and upon the decease of my said son Henry's children I direct that one quarter part of the residue and remainder of my estate be distributed among his grandchildren, such grandchildren representing their parents and receiving their shares as they respectively attain the age of twenty-one years and in the mean time to receive the income of their respective shares."

Referring to this provision, the court said in *Minot* v. *Taylor*, 129 Mass. 160, 162, the testator gives "a life estate to the children of his deceased son Henry with a like limitation over to their issue." Considering it more particularly, the children of Henry severally receive estates for life, with remainder over to

his grandchildren taking by right of representation, with a further provision that the shares of the children who die without issue shall go to the survivors and be distributed like their original shares among the grandchildren.

The first question in the case is whether the interests of the grandchildren vested on the death of the testator, or at some later time. We see nothing to take the case out of the general rule that such estates are to be deemed vested on the death of the testator, unless it plainly appears that he intended them to be contingent upon a future event. *Bosworth* v. *Stockbridge,* 189 Mass. 266, and cases cited. *Ball* v. *Holland,* 189 Mass. 369. Our reports are full of cases in which remainders created by similar language have been held to be vested immediately after the death of the testator, although the time for possession is postponed. *Shaw* v. *Eckley,* 169 Mass. 119. *Hills* v. *Simonds,* 125 Mass. 536. *Dole* v. *Keyes,* 143 Mass. 237. *Marsh* v. *Hoyt,* 161 Mass. 459. *Abbott* v. *Bradstreet,* 3 Allen, 587. *Bowditch* v. *Andrew,* 8 Allen, 339. The words import a present gift to the grandchildren. The shares are referred to as "their shares" and "their respective shares." The time of receiving their shares is when they respectively attain the age of twenty-one years, although in the meantime after the death of their parents they are to receive the income. This language as to the time of distribution should be considered as merely postponing the time of payment, and not the time of vesting. *Shattuck* v. *Stedman,* 2 Pick. 468. It is entirely consistent with an immediate vesting of the interest and a postponement of the possession. *Childs* v. *Russell,* 11 Met. 16. *Darling* v. *Blanchard,* 109 Mass. 176. So too is the provision that the grandchildren shall represent their parents in the distribution of the shares. *Gibbens* v. *Gibbens,* 140 Mass. 102. *Dodd* v. *Winship,* 144 Mass. 461.

It is equally clear, under our decisions, that in the case of such gifts to children or grandchildren the remainder will open to let in after born members of the class. *Ballard* v. *Ballard,* 18 Pick. 41. *Dorr* v. *Lovering,* 147 Mass. 530. *Hills* v. *Simonds,* 125 Mass. 536, 538. *Bosworth* v. *Stockbridge,* 189 Mass. 266. We are of opinion that in this part of the will the remainders over to the grandchildren vested on the death of the testator, as similar remainders vested at the same time under another provi-

sion in the same clause of this will. *Minot* v. *Doggett, post,* 435.
Treating the accretions to the shares which come from the death
of two of the children of Henry Taylor without issue as contin-
gent remainders, the grandchildren acquired, on the death of the
testator, vested interests in these contingent remainders, which
ultimately have the same effect as their vested remainders in
their respective shares. *Winslow* v. *Goodwin,* 7 Met. 363. *Cum-
mings* v. *Stearns,* 161 Mass. 506.

If nothing more appeared, we should have no hesitation in
ordering a distribution of the fund in equal shares, one for
the legal representatives of each of the four children of Henry
Taylor second who died leaving issue.

Intervening proceedings have raised further questions. Two
children of Henry Taylor have died leaving no issue, and their
shares go to the survivors, to be divided ultimately among the
grandchildren of Henry Taylor. The first of these was Abigail
W. Austin who died in 1857, and her share was rightly treated
as a part of the fund to be held for the others. Lydia B.
Taylor died November 27, 1902, and the trustee has in his
hands $9,740.66 which he was holding for her at the time of her
decease, and which constitutes the fund now to be distributed.

Eliza J. Weeks, one of the children of Henry Taylor, was the
wife of Ansel Weeks, Jr., and had a son born on May 30, 1856,
named Charles Warren Weeks. She died on December 25,
1857, and her son Charles W. Weeks died on May 30, 1858,
leaving his father Ansel Weeks, Jr. as his only heir at law.
Ansel Weeks, Jr. married Clelia Lega on May 10, 1862, and
by her had two children, Ethel, born on January 10, 1864, and
Oceana, born on December 20, 1865. He died on June 18, 1873,
leaving these two children and their mother surviving him, and
they, as well as George Purrington, Jr., administrator *de bonis
non* with the will annexed of Ansel Weeks, Jr., are before the
court as claimants in this case.

Under the will as we have construed it, Charles W. Weeks
took a vested interest in the fund from which his mother had
been receiving income, and on his death his interest passed to
his father Ansel Weeks, Jr. as his distributee, under whose will
it passes to the widow and children, the above mentioned claim-
ants. The trustees and other *cestuis que trust* have proceeded as

if there were no outstanding interests in Ansel Weeks, Jr., or in any of his family. At first, for many years, they treated the fund as if no payment of principal should be made to any of the grandchildren of Henry Taylor until after the decease of all his children. No payment nor division of principal was made after the death of Eliza J. Weeks, which occurred a little later. But after the decease of Henry Taylor, one of the children of the testator's son Henry, which occurred in 1886, a distribution was made of one fourth of the fund, which was paid over to Henry W. Taylor and Helen B. Ames, the two children of this grandchild, Henry Taylor. This payment was made under the direction of the Probate Court, given upon a bill for instructions filed by the trustees. Instead of including only one fifth of the entire fund as it should have done, it included one fourth of it, on the theory that the share of which Eliza J. Weeks received the income passed to her surviving brothers and sisters, and not to her son. The question arises whether this distribution and payment can be set aside in this proceeding. The decree authorizing and directing it was made by the Probate Court which appointed the trustees and had jurisdiction of the fund. It was made after general notice given by publication in accordance with law and the rules of the court. To make a valid decree for the management and distribution of the trust fund it was not necessary that the court should obtain jurisdiction of every person interested in it by making personal service upon each, such as would be necessary for the maintenance of an adversary suit *in personam.* *Pierce* v. *Prescott,* 128 Mass. 140. *Tyler* v. *Court of Registration,* 175 Mass. 71. *Bonnemort* v. *Gill,* 167 Mass. 338, 340. *Lamson* v. *Knowles,* 170 Mass. 295. Moreover, the interest of the estate of Ansel Weeks, Jr., as heir at law of his son Charles W. Weeks, was represented before the Probate Court by William L. Taber, the executor of the will of Ansel Weeks, Jr., who acknowledged in writing due notice of the petition, and requested that the petitioners be instructed and directed to pay over one quarter of the fund to Henry W. Taylor and Helen B. Ames. On November 3, 1858, Ansel Weeks, Sr., the paternal grandfather of the infant Charles W. Weeks, had been duly appointed administrator of his estate. This administrator died on August 5, 1876. Nearly twenty-eight years had elapsed between the

time of his appointment and the filing of the petition for instructions on which this decree was made. Presumably all claims of creditors of the infant Charles W. Weeks, if there ever were any, had long been paid or barred, and his estate had been fully settled except as to this right in remainder, in which no one but his father, Ansel Weeks, Jr., had any interest. Under these circumstances we are of opinion that personal notice to Taber, the executor of the will of Ansel Weeks, Jr., through whom alone the widow and children could enforce their legal rights, was as effectual, in connection with the general publication, to give jurisdiction to the court, as like notice would have been to these claimants themselves. These claimants were then living in England, and have continued to live there ever since. We are of opinion that this decree of the Probate Court was effectual and binding upon the parties, in its operation upon that portion of the fund which was distributed under it. In this petition, which asks for instructions only in regard to the fund now in the hands of the petitioner, we cannot interfere with payments made under a valid decree of the court. *Sohier* v. *Burr*, 127 Mass. 221.

The decree had no effect upon the rights of the parties to other parts of the fund, which remained in the hands of the trustees. No question of law or fact was put in issue and adjudicated, in such a way as to work an estoppel against the further consideration of it at the request of any of the parties, when it arises in subsequent proceedings in court. *Shores* v. *Hooper*, 153 Mass. 228, 233. *Foye* v. *Patch*, 132 Mass. 105. *Bradley* v. *Bradley*, 160 Mass. 258.

After the payment by the trustees of one fourth of the fund under the decree, the remainder of it was vested in interest in equal one fourth parts in William Taylor, third, Sarah P. Warren, and Lydia B. Taylor, grandchildren of the testator and children of his deceased son Henry Taylor, and in the claimants of the share of Charles W. Weeks. On the death of William Taylor, third, one undivided third of the fund was paid by the trustee to his son William W. Taylor, instead of the one fourth to which he was entitled; and on the death of Sarah P. Warren subsequently, one undivided half of the amount then remaining was paid to her daughter Anne Ashton Warren, instead of one fourth

of the fund as it was before the payment to William W. Taylor. The claimants under Charles W. Weeks say that these two errors should be corrected in making disposition of the remainder of the fund now to be distributed. All claims for income are waived, and it is easy to correct the errors in accounting for and paying over the principal, especially as all persons interested are before the court, and the money in the hands of the trustee is sufficient to satisfy the just claims of all parties. The Probate Court has ample jurisdiction to compel the correction of such errors, even when they have been made under the authority of a decree of the court. *Harris* v. *Starkey,* 176 Mass. 445. Where they are made by the parties themselves, as these were, through a misunderstanding of their rights, it is plain that they should be corrected by a decree for the distribution of the remainder of the fund, in such a way as to make the entire payment to each that to which he was originally entitled.

After the expiration of more than forty-seven years since the death of Charles W. Weeks and the appointment of an administrator of his estate, we see no reason, under the circumstances here shown, for the appointment of an administrator *de bonis non* of his estate. It seems certain that the administrator *de bonis non* with the will annexed of Ansel Weeks, Jr. should receive the share of the principal to which Charles W. Weeks would be entitled if he were living. *Cummings* v. *Stearns,* 161 Mass. 506. *Buswell* v. *Newcomb,* 183 Mass. 111.

It has been contended that the representatives of Ansel Weeks, Jr. have been guilty of such laches as to deprive them of their interest in the fund. It appears that Ansel Weeks, Jr. was a mariner, who was absent upon the sea most of the time for many years until shortly before his death, and that his widow and children have lived in England, and have had no knowledge of the proceedings in 1886 in the Probate Court. The money has been held under an express trust, and at no time has there been a repudiation of the trust. We are of opinion that the amount necessary to correct the errors in the payments of the principal to William W. Taylor in 1888, and to Anne Ashton Warren in 1892, should be added to the fund now in the hands of the trustee, and one half of the amount so produced be paid over to George Purrington, Jr., administrator; and the other half of

this amount be divided into four equal parts, one for William
W. Taylor, one for Anne Ashton Warren, one for George Pur-
rington, Jr., administrator, and one to be divided into two equal
shares, of which Matilda G. Taylor of Worcester, administratrix
of the estate of Henry W. Taylor, will receive one, and Helen B.
Ames the other, — except that the one fourth part which is to
go to William W. Taylor is to be diminished by deducting the
amount of the overpayment to him on the death of his father,
and the one fourth part which is to go to Anne Ashton Warren
is to be diminished by deducting the amount of the overpayments
to her on the death of her mother.

*So ordered.*