GEORGE L. HUNTRESS & another, trustees, *vs.* THOMAS ALLEN & others.

SAME *vs.* SAME.

Suffolk.     December 5, 1906. — April 22, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Trust.     Devise and Legacy.*

A testator, having devised and bequeathed the residue of his estate to trustees, provided as follows: "It is my will that all my children . . . shall share in the benefits and provisions of this trust, and that the share of any child of mine in the body or income of said trust estate shall not be liable to or for his or her debts, in any manner or form whatsoever, or subject to trustee process, by any creditor on any claim whatsoever." *Held,* that this provision expressed a plain desire on the part of the testator that, until the termination of the trust as to any of his children under the terms of the will, the share of such child in the income and body of the fund should be free from any interference by creditors, and that this intent would be upheld and given full effect.

A testator devised and bequeathed the residue of his estate to trustees and provided as follows: "It is my will that all my children . . . shall share in the benefits

and provisions of this trust, and that the share of any child of mine in the body
or income of said trust estate shall not be liable to or for his or her debts, in
any manner or form whatsoever, or subject to trustee process, by any creditor
on any claim whatsoever." After giving the trustees a discretionary power to
terminate the trust as to any child by paying and conveying to such child his
or her share, and providing for the final distribution of the trust estate when
the testator's youngest surviving child should arrive at the age of twenty-five
years, the will further provided as follows : " Should any child of mine decease
before arriving at the age of twenty-five years, or prior to the termination of
the trust as to the share of such child, he or she leaving issue surviving him
or her, then in that event, upon decease of such child as aforesaid I authorize,
empower and direct my said trustees to pay over and distribute in money what
would be the proportionate share of such child at the time of his or her decease
of the income and body of said trust estate to and among his or her issue in
equal shares, and so terminate the interest of said issue in and to said trust es-
tate." Then came a provision that in the event of the death of any child of the
testator without issue before the termination of his or her interest in the trust
estate, the share of such child should "lapse into the body of the trust." One
of the sons of the testator who survived him died at the age of twenty-nine years
before the termination of the trust as to his share, leaving a daughter as his only
issue. During his lifetime this son of the testator had executed and delivered
an instrument purporting to be a mortgage and assignment of his interest in
his father's estate. Upon a bill by the trustees declaring their readiness to
terminate the trust as to the share of this son of the testator, and praying for
instructions, it was *held*, that this son of the testator took a vested interest in a
contingent remainder in the trust estate which was subject to be divested and
was divested by his death before the termination of the trust leaving issue, and
that upon the termination of the trust his daughter was entitled to the whole of
his share in the estate to the exclusion of the alleged mortgagee.

Under Chancery Rules 31 and 32 a party who has brought in written objections
to a master's report unless he files with the clerk within fifteen days from the
filing of the report exceptions founded on his objections cannot bring his objec-
tions before the full court by appeal, but in the present case the question
sought to be raised by the objections was raised by the appeal in determin-
ing whether the decree properly could be entered upon the pleadings and the
report.

In the interpretation of a will which bears evidence throughout of having been
drafted carefully, weight can be attached to an arrangement of the paragraphs
which would not have the same significance in a testament drawn unskilfully.

A testator, having devised and bequeathed the residue of his estate to trustees,
provided as follows : " It is my will that all my children . . . shall share in the
benefits and provisions of this trust, and that the share of any child of mine in
the body or income of said trust estate shall not be liable to or for his or her
debts, in any manner or form whatsoever, or subject to trustee process, by any
creditor on any claim whatsoever." The paragraphs preceding this clause au-
thorized the trustees in their discretion to make advancements out of the income
and body of the fund for the benefit of the several beneficiaries, and authorized
the accumulation of income. The paragraphs succeeding the clause above
quoted provided that if any child of the testator should die before arriving at
the age of twenty-five years or before the termination of the trust as to the
share of such child, leaving issue surviving, his or her share should go to such
issue, and that, upon the death of any child of the testator without issue before

the termination of his or her interest in the trust estate, the share of such child should lapse into the body of the trust. When the youngest child of the testator arrived at the age of twenty-five years the trustees were directed to terminate the trust. One of the sons of the testator executed an instrument purporting to be a mortgage and assignment of his interest in his father's estate. While this son was living the trustees desired to terminate the trust under its terms as to his share, and filed a bill for instructions as to the right of this son as against the mortgagee claiming under him. *Held,* that this son had a vested interest in a contingent remainder in the trust estate subject to be divested on his death before the termination of the trust as to his share, but, the event upon which his interest was to be divested not having happened, the mortgage assignment became operative, and the trustees were instructed to set aside from the share of this son a sum sufficiently large with its assured accumulation to meet the mortgage note at maturity, paying over the balance to this son.

Two BILLS OF INTERPLEADER, filed in the Supreme Judicial Court on December 21, 1904, by the trustees under the will of Patrick T. Hanley, late of Boston, to determine the interests of the claimants of two separate funds created by the tenth article of that will respectively for the benefit of James F. Hanley and Frederick J. Hanley, sons of the testator.

Both cases were referred to Charles E. Shattuck, Esquire, as master. He filed a report to which certain objections and exceptions were taken.

In the first case there was a final decree and an appeal therefrom, and the second case was reserved by *Braley,* J., upon the pleadings and the master's report (except so much thereof as related to the question of fraud) and the exceptions of the defendant Karsch Brewing Company to that report, for determination by the full court. At the request of the parties an order was made that the cases be consolidated for the purpose of presentation before the full court.

Patrick T. Hanley died in March, 1899. His will was dated June 28, 1898. The tenth clause of the will was as follows:

" Tenth : All the rest, residue and remainder of my estate, whether real, personal or mixed, and wherever situate I give, devise and bequeath to my said trustees. To Have and to Hold to them and their heirs and assigns forever, But In Trust Nevertheless for the following uses and purposes, and with the following powers, namely : —

" (*a*) To hold, judiciously manage . . . .

" (*b*) Out of the net income and the body of said trust estate

I authorize and empower my said trustees to expend for the support, maintenance and education of each of my children Ann, Ellen and James a sum . . .

" (c) Out of the net income and body of said trust estate I authorize and empower my said trustees to pay the expenses of the last sickness, funeral and burial of any child or children of mine . . .

" (d) Out of the net income and body of said trust estate I authorize and empower my said trustees to advance to any child of mine . . .

" (e) No further or other sum out of the body of said trust estate and income thereof shall be expended at any time by my said trustees for the support and maintenance of any of my children, except as hereinbefore provided, unless in the judgment of said trustees, and in their discretion and judgment solely, and their judgment in the matter shall be final and conclusive, the child in each instance shall be in extreme need of such maintenance and support, and no child, or guardian of any child, shall have the right to demand any income, support or maintenance of such trustees, but said trustees may give such support and maintenance to any child at any time during the continuance of said trust, if the trustees deem it advisable and proper and not otherwise . . .

" (f) I authorize, empower and direct my said trustees to allow any income not disposed of or expended during the continuance of this trust to accumulate, to be added to, and thereafter form a part of the entire body of said trust estate.

" (g) It is my will that all my children, with the exception of my daughter Grace, shall share in the benefits and provisions of this trust, and that the share of any child of mine in the body or income of said trust estate shall not be liable to or for his or her debts, in any manner or form whatsoever, or subject to trustee process, by any creditor on any claim whatsoever.

" (h) I authorize and empower my said trustees, anything herein to the contrary notwithstanding, at any time when in the judgment and discretion of said trustees they may deem it safe and wise so to do, and not otherwise, to terminate the trust herein created and established, as to the share of any child of mine in said trust estate, by paying and conveying over to, such

child, his, or her, proportionate share, at the time of such payment and conveyance of the body and income of said trust estate, and terminating his, or her, interest in, and right thereto, providing the said child shall execute a deed of release under seal to said trustees, in such form and terms as they may approve of, releasing to them and said trust estate, any claim, demand and interest whatsoever in and to said trust estate, which release shall be final and binding on him, his heirs and assigns.

" (*i*) Upon the arrival of the youngest child of mine surviving at the age of twenty-five years I authorize, empower and direct my said trustees, unless in the instance of any child, or children, of mine their interest in the said trust estate has been previously terminated, under the powers hereinbefore given, to convey, distribute and pay over the remainder of said trust estate to such children of mine surviving to the arrival of such event and time his, her and their proportionate share of the trust estate undistributed and unpaid over, keeping however in mind that all payments made under sub-clause (*b*) of the Tenth Clause of this my will to my three youngest children shall not be charged to them in said final settlement and distribution as advances or otherwise.

" (*j*) Should any child of mine decease before arriving at the age of twenty-five years, or prior to the termination of the trust as to the share of such child, he or she leaving issue surviving him or her, then in that event, upon decease of such child as aforesaid I authorize, empower and direct my said trustees to pay over and distribute in money what would be the proportionate share of such child at the time of his or her decease of the income and body of said trust estate to and among his or her issue in equal shares, and so terminate the interest of said issue in and to said trust estate.

" (*k*) In the event of the death of any child or children of mine without issue before the termination of his or her interest in the trust estate it is my will that the share of the trust estate to which he or they would be entitled under the terms of this instrument *shall lapse* into the body of the trust.

" (*l*) It is my will that there shall always be two trustees at least . . ."

*G. L. Huntress*, for the trustees, stated the case.

*L. M. Friedman*, (*S. Keyes* with him,) for the Karsch Brewing Company and Thomas Allen.

*H. Albers*, for the guardian of Gertrude E. Hanley.

*W. S. Thompson*, for James F. Hanley.

RUGG, J.   The plaintiffs state in their first bill that they are ready and willing to terminate the trust created by the tenth clause, so far as it relates to the interest of James F. Hanley, and offer to pay the same into court or to such persons as the court may order.   All other legatees interested in the trust clause and Thomas Allen and the Karsch Brewing Company are parties to this proceeding.

The second suit is by the same plaintiffs in the same capacity, and joins the same parties as defendants.   This bill states that Frederick J. Hanley, one of the beneficiaries under said will, died in May, 1904, leaving one child, Gertrude E. Hanley, who now claims that part 'of the residuary estate devised to Frederick, and avers that the trustees are ready to terminate the trust so far as it relates to Frederick J. Hanley and Gertrude, his daughter, and prays for instructions as to the persons to whom the legacy shall be paid.   Both suits were referred to a master, who found that on October 7, 1900, James F. Hanley and Frederick J. Hanley each signed their several notes for $2,000 to the order of Thomas Allen, and each secured the payment thereof by the execution and delivery of a mortgage or assignment of his interest in his father's estate, and that these instruments were delivered to Allen on the following day, and that on December 19, 1902, Allen duly assigned and transferred to the Karsch Brewing Company all the right, title and interest in the estate of Patrick T. Hanley acquired by him under said two mortgages, and delivered to it the notes.   This assignment was to secure the payment of a loan of $2,700 made to him by the company.

1. In the second case the master ruled, upon the facts found, that Frederick J. Hanley, having deceased before the termination of the trust, leaving, as his only issue, Gertrude E. Hanley, she was entitled, upon the termination of the trust, to his share in the estate, and that Allen and the Karsch Brewing Company took nothing by the Frederick J. Hanley mortgage and note.

To this ruling objections were duly made and exceptions season-
ably taken to the master's report and filed by Allen and the
Karsch Brewing Company, and this case comes before us on
a reservation upon the pleadings, the master's report and the
exceptions thereto of the Karsch Brewing Company. The ques-
tion raised is whether under clause tenth of the will of Patrick
T. Hanley the interest of his son, Frederick J. Hanley, upon
the latter's death, vested in Gertrude E. Hanley to the exclu-
sion of any rights acquired under the mortgage and assignment
to Allen and the Karsch Brewing Company. Paragraph (*g*)
expresses a plain desire on the part of the testator that, until
the termination of the trust respecting any of his children in
one of the ways pointed out in the succeeding paragraphs of the
will, the share of such child in the income and body of the fund
shall be free from any interference by creditors. That such a
testamentary intent will be given full effect has been decided by
*Broadway National Bank* v. *Adams*, 133 Mass. 170, and the many
cases following it, the last being *Alexander* v. *McPeck*, 189
.Mass. 34. The will in other paragraphs created for Frederick
J. Hanley a vested interest in a contingent remainder. *Cum-
mings* v. *Stearns*, 161 Mass. 506. *Minot* v. *Purrington*, 190
Mass. 336. His interest, whether assigned or not, was liable
to be divested by the happening of the contingency. *Wain-
wright* v. *Sawyer*, 150 Mass. 168. The death of Frederick J.
Hanley at the age of twenty-nine, before the termination of the
trust, leaving the respondent Gertrude as his only issue, is the
contingency, which the testator had in mind in phrasing para-
graph (*j*). An ingenious argument has been plausibly urged
that clause (*g*) creates a vested interest, and that the word " or "
in clause (*j*) should be construed as " and," and that therefore
the contingencies contemplated by clauses (*j*) and (*k*) did not
happen to Frederick, and hence his interest in the fund belongs
to Allen and the Karsch Brewing Company to the extent of
their claims. But this argument is not sound. The testator
manifested a clear intention that nothing should vest finally, free
from the possibility of divestment, in any of his children, until
the happening of the contingencies described in paragraph (*h*)
or (*i*).

2. The master ruled in the first case that if James F. Hanley

should be living at the termination of the trust, the Karsch Brewing Company, if then the owner of the James F. Hanley note and mortgage, would be entitled to the sum of $2,000 out of the share of the trust estate belonging to James F. Hanley, with interest. Objections to this ruling appear to have been filed with the master by James F. Hanley, but no exceptions were taken to the report. A final decree was entered, in accordance with this finding of the master, but it contains no paragraph as to the disposition of the balance of the fund due James F. Hanley, after satisfying the claim of the Karsch Brewing Company. From this decree James F. Hanley appealed. He appears to have overlooked the provisions of Chancery Rules 31 and 32 of this court, although he complied with rule 31 to the extent of bringing in written objections to the master, which were appended to the report. In order to enable him to present to this court his rights saved by objections to the report, he must comply with the further provisions of these rules, and file his exceptions founded upon the objections within fifteen days from the filing of the report, and these exceptions must briefly and clearly specify the matter, to which he excepted. There is, therefore, nothing before us on his objections. *Roosa* v. *Davis*, 175 Mass. 117. *Hillier* v. *Farrell*, 185 Mass. 434. It is still open to the appellant, however, to raise the question whether such a decree properly could be entered upon the pleadings and report, and his substantial rights appear thus to be preserved. *Dwyer* v. *Bratkoysky*, 170 Mass. 502. It is contended in behalf of James F. Hanley that, inasmuch as paragraph (*g*) of clause tenth of the will creates a spendthrift trust, under *Broadway National Bank* v. *Adams*, 133 Mass. 170, there can be no diversion of the amount that may be due him upon the termination of the trust from his hands to those of his creditors. Reading this clause as a whole, and discovering the intent of the testator from all its subdivisions, paragraph (*g*) appears to apply to the alphabetical paragraphs which precede it. Paragraphs (*b*), (*c*), (*d*) and (*e*) authorize the trustees in some wholly discretionary respects to make advancements out of the income and body of the fund for the benefit of the several beneficiaries, while (*f*) authorizes the accumulation of income. These paragraphs, including (*g*), contemplate the continuance of the trust. The succeeding

paragraphs, (*h*), (*i*), (*j*) and (*k*), look to the termination of the trust under various conditions. If it had been the desire of the testator to protect the beneficiaries from their own improvidence, as expressed by a mortgage or assignment, or from the inter- ference of creditors in any other way at the time of the final distribution, he naturally would have placed a paragraph ex- pressing that intent at the end of his directions as to the final distribution upon the termination of the trust, rather than at the end of those paragraphs, which relate solely to its continued administration. He also would have used language unequivo- cally expressive of such intention. This view gathers force from the doubt, which exists, as to the power of a testator to accomplish a sequestration from creditors at the time of a final distribution of the principal of a trust. *Munroe* v. *Dewey*, 176 Mass. 184. The will bears evidence throughout of having been drafted carefully, and therefore weight can be attached to the arrangement of paragraphs, which could not be attributed to an unskilfully drawn testament. The testator well may have thought that the discretion of the trustees, as to the termina- tion of the trust respecting any one of his children, would not be exercised, unless that one either had ceased to be improvident, and therefore was able to manage property, or had so acted with reference to his interest in the fund as to make it just that cred- itors or assignees should be given an opportunity to reach it. There is strong ground for the opinion that paragraph (*g*), taken by itself, does not forbid a voluntary assignment by a beneficiary. See *Munroe* v. *Dewey, supra.* In any event, under the circumstances now existing as to James and his interest in the fund, his assignment was of a vested interest (*Minot* v. *Pur- rington, supra*) and, the contingency to which it was subject not having happened, is now operative. *Wainwright* v. *Sawyer, supra.* The point is made upon his brief that the master's re- port contains no finding that there has been any breach in the performance of the conditions named in the assignment, in the payment of interest upon the notes, and that therefore the por- tion of the decree, which directs the immediate payment of his note from the fund, cannot be justified. The note was dated October 17, 1900, payable in eight years, although the assign- ment or mortgage of his interest contains the provision that he

may pay the principal sum due at an earlier date. Neither the Karsch Brewing Company as the holder of the note nor Allen makes any objection and neither has appealed from the decree, so the point is not open to either of them. It is therefore not necessary to consider in this connection the principle of *Payson* v. *Lamson*, 134 Mass. 593. If James F. Hanley insists upon the application of strictly technical rules, apparently, upon the master's report, he has a right to insist that the fund covered by the mortgage assignment shall not be applied to the actual payment of the note until its maturity. If this is done, however, a sum out of the fund must be set aside sufficiently large, with its assured accumulation, to meet the note at maturity. If, within fifteen days from the entry of the rescript in this case, James F. Hanley elects, the decree must be modified in respect of the time of payment of the note, and the details of a paragraph to be inserted setting apart a sum of money sufficient to pay his note at maturity be framed before a single justice. Unless such election is filed, the decree in this respect is to be affirmed. The decree in this case, however, fails to instruct the plaintiffs as to what is to be done with the balance of the fund after satisfying the claim of the Karsch Brewing Company. It must also be modified to the extent of directing that such balance be paid to James F. Hanley. With these modifications it is affirmed. In the second case a decree should be entered directing the payment of the entire fund to Gertrude E. Hanley.

*So ordered.*