KING v. UNITED STATES.
No. 3125.

Circuit Court of Appeals, First Circuit.
May 23, 1936.

Charles B. Barnes, Jr., of Boston, Mass. (Charles C. Craig, of Boston, Mass., on the brief), for appellant.

J. Louis Monarch, Sp. Asst. to Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., Sewall Key and Ellis N. Slack, Sp. Assts. to Atty. Gen., and Francis J. W. Ford, U. S. Atty., and Arthur L. Murray, Sp. Asst. to U. S. Atty., both of Boston, Mass., on the brief), for the United States.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

The statutes here involved are section 161 (a) (2) and section 162 (b) of the Revenue Act of 1928 (chapter 852, 45 Stat. 791 [26 U.S.C.A. §§ 161, 162 and notes]). The question is whether the income that accrued from the trust fund in the hands of the trustees during the years 1929 and 1930 and paid by them to Henry P. King was income belonging to the appellant and taxable to her, notwithstanding her assignment or attempted assignment made in 1920 in anticipation of its accrual in those years.

There can be no question that, according to the terms of the trust, the appellant was the beneficiary to whom the net income was to be paid during her life, and the question is whether by the last clause of the trust—that "payments of income hereunder are to be made upon the sole order or receipt of the beneficiary without power of anticipation by voluntary or involuntary assignment or otherwise and free from the control of any creditors"—

so restricted her power of alienation in anticipation of the accrual and payment to her of the income that the instrument of April 1, 1920, was ineffectual as a transfer and assignment of income thereafter to accrue.

■ We are not concerned here, as the appellant seems to think, with the question whether she had an equitable interest in the corpus of the trust that she could assign without qualification. Judge Holmes, as later pointed out, indicates that her estate was a limited one—not absolute. The question before us, however, is a more restricted one. It is rather whether her power of alienation with respect to *the income* was so restricted that she could not anticipate its accrual by a voluntary assignment or otherwise; for, if the last clause of the trust imposed such a restriction, it would be a valid one in Massachusetts where the trust was created and the parties resided; and the assignment would be invalid.

■ We think that the clause clearly imposed such a restriction and that the instrument of April 1, 1920, according to its terms and intent, was an attempted assignment made in violation of the restriction.

In Broadway National Bank v. Adams, 133 Mass. 170, 43 Am.Rep. 504, the testator, in his will, created a trust of which he made his executors trustees and gave them $75,000 "to pay the net income thereof, semiannually, to my said brother Charles W. Adams, during his natural life, such payments to be made to him personally when convenient, otherwise, upon his order or receipt in writing; *in either case free from the interference or control of his creditors, my intention being that the use of said income shall not be anticipated by assignment.*" There the plaintiff, a creditor of the beneficiary, sought to reach and apply in payment of his debt the income of the trust fund created for the beneficiary's benefit by his brother's will. The beneficiary, however, had not attempted to anticipate the income by an assignment, but the plaintiff, a creditor, was seeking to reach and apply the income as it accrued in contravention of the provisions of the trust that the income should be "free from the interference or control of his creditors" and nonassignable. In that case it was said:

"That, if the intention of the founder of a trust, like the one before us, is to give to the equitable life tenant a qualified and limited, and not an absolute, estate in the income, such life tenant cannot alienate it by anticipation, and his creditors cannot reach it at law or in equity. It seems to us that this principle extends to and covers the case at bar. The founder of this trust was the absolute owner of his property. He had the entire right to dispose of it, either by an absolute gift to his brother, or by a gift with such restrictions or limitations, not repugnant to law, as he saw fit to impose. His clear intention, as shown in his will, was not to give his brother an absolute right to the income which might hereafter accrue upon the trust fund, with the power of alienating it in advance, but only the right to receive semiannually the income of the fund, which upon its payment to him, and not before, was to become his absolute property. His intentions ought to be carried out, unless they are against public policy. There is nothing in the nature or tenure of the estate given to the *cestui que trust* which should prevent this. The power of alienating *in advance* [italics supplied] is not a necessary attribute or incident of such an estate or interest, so that the restraint of such alienation would introduce repugnant or inconsistent elements."

In Boston Safe Deposit & Trust Co. v. Luke, 220 Mass. 484, 108 N.E. 64, L.R.A. 1917A, 988, the Deposit & Trust Company by the testator's will was given the sum of $75,000, but in trust to pay over the net income and principal thereof, as follows:

"(1) The whole of the net income thereof to be paid my adopted daughter, Fannie Leighton Luke, wife of Otis H. Luke, of said Brookline, during her life quarterly in each and every year together with such portion of the principal of said trust fund as shall make the amount to be paid her at least three thousand dollars a year during her life, said income to be free from the interference or control of her creditors."

The trustees (the Deposit & Trust Company) brought a bill in equity seeking instructions as to whether the interest of Fannie Leighton Luke under the above clause passed to the trustee in bankruptcy of her estate. The Massachusetts court was of the opinion that the equitable life interest of the beneficiary was assignable, as there was nothing in the will which forbade the life tenant's assigning it; but

they nevertheless held that the immunity of the equitable life interest went back to the fact that it was not subject to bankruptcy proceedings at all, and said:

"By the terms of the will creating it the equitable life interest here in question is to be 'free from the interference or control of her (the life tenant's) creditors.' It is immaterial whether the machinery set in motion by the creditors is a bill in equity to reach and apply her equitable interests, or an involuntary petition in bankruptcy to secure all her property legal and equitable. The equitable life estate created by the will here in question is 'to be free from the interference or control of her creditors,' and under the doctrine of Broadway National Bank v. Adams, 133 Mass. 170, 43 Am.Rep. 504, that direction will be enforced. * * *

"By the terms of the will 'the whole income' is to be 'free from the interference or control of her (the life tenant's) creditors.' The whole income, including all arrearages, is to be paid to the life tenant."

This case was taken to the Supreme Court of the United States (Eaton v. Boston Safe Deposit & Trust Co., 240 U.S. 427, 36 S.Ct. 391, 60 L.Ed. 723), and the decree of the Massachusetts court was affirmed in an opinion written by Mr. Justice Holmes. He evidently questioned whether the bankrupt's equitable life interest was unqualifiedly assignable, even though there was no express provision in the will forbidding the life tenant assigning it. As to this he said:

"If it be true without qualification that the bankrupt could have assigned her interest and by so doing could have freed from the trust both the fund and any proceeds received by her, the argument would be very strong that the statute [the Bankruptcy Act] intended the fund to pass. There would be an analogy a least with the provision giving the trustee all powers that the bankrupt might have exercised for her own benefit, § 70a (3) [11 U.S.C.A. § 110], and there would be difficulty in admitting that a person could have property over which he could exercise all the powers of ownership *except to make it liable for his debts.* The conclusion that the fund was assignable was based on two

cases, and we presume was meant to go no farther than their authority required. The first of these simply held that an executor was not liable on his bond for paying over an annuity to an assignee as it fell due, when the assignor to whom it was bequeathed free from creditors had not attempted to avoid his act. Ames v. Clarke, 106 Mass. 573. The other case does not go beyond a dictum that carries the principle no farther. Huntress v. Allen, 195 Mass. 226, 80 N.E. 949, 122 Am. St.Rep. 243. It is true that where the restriction has been enforced there generally has been a clause against anticipation, but the present decision in following them *holds the restricting clause paramount,* and therefore we feel warranted in assuming that the power of alienation will not be pressed to a point inconsistent with the dominant intent of the will. Whether, if that power were absolute, the restriction still should be upheld, as in case of a statutory exemption that leaves the bankrupt free to convey his rights, it is unnecessary to decide." (Italics supplied.)

This decision in effect holds that the power of alienation is restricted, not absolute, even where the clause simply provides the "income to be free from the interference or control of her creditors." He then says:

"The law of Massachusetts treats such restrictions as limiting the character of the equitable property and inherent in it. Dunn v. Dobson, 198 Mass. 142, 146, 84 N.E. 327; Lathrop v. Merrill, 207 Mass. 6, 9, 92 N.E. 1019."

In view of these decisions of the Massachusetts court and of the Supreme Court of the United States, we conclude that, under the law of Massachusetts, income accruing under a trust containing such provisions as are here shown is made incapable of transfer in anticipation of its accrual by an assignment of the beneficiary. The assignment of Alice S. King to her son Henry P. King was invalid; the income accruing from the trust fund during the years 1929 and 1930 belonged to her and was properly taxed to her.

The judgment of the District Court is affirmed, with costs to the appellee in both courts.