PATRICK T. BROSNAN, administrator, *vs.* MARTINA A. GAGE.

Middlesex.    March 24, 1921. — November 23, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*River. Merrimack River. Negligence,* In use of river for harvesting ice, Contributory negligence, In skating upon river. *Skating.*

At the trial of an action by an administrator for the conscious suffering and the causing of the death of the plaintiff's intestate when he fell through thin ice over a hole in a river alleged to have been left negligently unguarded by the defendant, there was evidence tending to show that the ice over the hole was about half an inch thick, while on the rest of the river it was about twelve or fifteen inches thick; that the surface of the thin ice was of the same appearance as that of the thick ice, that the intestate and two companions were skating over the river from five to ten yards apart, when the intestate came upon the thin ice, it cracked and broke and he fell into the water; that for a minute or two he tried without success to break through the thin ice to reach the thick ice and then sank and drowned. *Held,* that it could not be ruled as a matter of law that the intestate was guilty of contributory negligence, nor that he did not consciously suffer before his death.

An ice merchant, who, by license from the owner of land by and under the Merrimack River above Pawtucket dam where the public are accustomed to skate, cuts and harvests ice in the skating season upon that part of the river, is bound

in law to exercise his privilege with due regard to the safety of those of the public who come upon the river for the pleasure of skating; and if, in so harvesting ice, he leaves a hole unguarded over which there is formed ice too thin to support a boy's weight and which on its surface is of the same appearance as is the thick ice, and four days later a boy, skating on the river without contributory negligence, skates upon the thin ice and by its breaking is thrown into the river and is drowned, the conscious suffering and death of the boy may be found to have been caused by negligence of the ice merchant in failing to give warning of the hole left in the cutting of the ice.

TORT, by the administrator of the estate of Thomas J. Brosnan for the causing of conscious suffering and the death of the plaintiff's intestate which resulted from his breaking through thin ice formed over an area of the Merrimack River above the Pawtucket dam at Lowell where, about four days previously, the defendant had cut ice for commercial purposes. Writ dated June 27, 1917.

In the Superior Court, the action was heard by *Keating, J.,* without a jury. Material evidence is described in the opinion. At the close of the evidence at the request of the defendant, the judge ruled as a matter of law that the plaintiff was not entitled to recover, found for the defendant and reported the action for determination by this court, the parties having agreed that, if the ruling was right, judgment was to be entered for the defendant; otherwise, that there was to be a new trial.

*M. G. Rogers,* for the plaintiff.

*T. W. Proctor, (A. P. Sawyer* with him,) for the defendant.

PIERCE, J. This is an action to recover for the conscious suffering and death of a son of the plaintiff by drowning in the Merrimack River, at Lowell, at a point above the Pawtucket dam on the morning of Feburary 28, 1917.

The deceased, while skating, broke through thin ice which had formed over an area of the river at a place where, on or before Feburary 24, 1917, the defendant had cut ice for commercial purposes, and where upon the removal of the ice the defendant had not placed nor caused to be placed any barriers, railings or other warnings to indicate where the thin ice began and the thick ice ended. The case was heard without a jury.

At the close of the evidence, at the request of the defendant, the trial judge ruled as matter of law that the plaintiff was not entitled to recover, and found for the defendant. The case is

reported for determination by this court, with an agreement of all the parties that if the judge was right in making that ruling and granting that motion, "judgment is to be entered for the defendant; otherwise, there is to be a new trial."

The reported facts and evidence in their aspect most favorable to the contention of the plaintiff in substance justified a finding of the following facts: The intestate went upon the river at about half past eight in the morning of Feburary 28, 1917, with his brother James and one John J. Quill, from a point on the north side of the Merrimack River a little above the Pawtucket dam; the three boys skated up the river to a point about one hundred yards above the scene of the accident, then, after skating around making fancy figures, they started down the river, all skating at an ordinary gait, — the intestate ahead and nearest the middle of the river, James ten yards behind, not so near the middle, and John five or six yards nearer the north shore than the intestate. It could have been found on conflicting evidence that the surface of the thin ice where the accident occurred looked just the same as that of the thick ice; that the thick ice in the thickest part was about twelve to fifteen inches thick and that the thin ice, which broke when the intestate came upon it, was about one half an inch thick. The boys James and John each testified in substance that his attention was first attracted to the fact that there was thin ice by hearing it crack and seeing Thomas go in at a time when all three were skating down stream. After the intestate went through the ice he tried, and failed, to break a way through the thin ice to the thick ice for a minute or two, — then sank, and was seen alive no more.

The evidence warranted a finding that for many years before the accident it was usual each year, as soon as the ice was thick enough, for people to skate on the river; that as many as fifteen hundred or two thousand people had been seen to skate on the river at the same time; that there would be fifty or a hundred people skating thereon at almost any time; and that this use was general from the falls to Middlesex, which village is above the scene of the accident. It also warranted a finding that the river had been used by boats, motor and steam, going up and down the river past the place of the accident from a point below the scene of the accident to Nashua, for more than thirty years. It is

apparently undisputed that the tide does not ebb and flow at Lowell above Pawtucket Falls; that the crest or cap of the dam at Pawtucket Falls is eighty-two feet above sea level; and that the water thus impounded is a pond from which the water is distributed through canals to the mills of the manufacturing companies in Lowell.

As concerns the legal title and relation of the defendant to the place of the accident, the evidence justified or required a finding that she owned in fee the land on the south side of the river from the ice houses near the dam up the river for almost six thousand feet, with the exception of five hundred and fifty-five feet which she held by lease; it also warranted a finding that she had title in fee to land, or upon an agreement for the use of the river bank and bed of the river on the north of the river opposite her premises, for about three thousand feet; but the evidence warranted the further finding that "she did not own any land at or near the site of the bath house on the north shore" opposite which, the evidence warranted a finding, the drowning took place; and did not in February, 1917, have any express permissive rights from the owner of the bath house site.

The contention of the defendant that she had the same right to cut ice at the place of the accident as over her land owned by deed, because of a "continuous exercise of right" for over half a century, upon the evidence could not have been ruled as matter of law. Indeed the evidence warranted a finding of a permissive and not adverse use under a claim of right.

Upon the foregoing facts, which are not seriously disputed and which could warrantably be found, the court below could not rightly rule as matter of law that the intestate, by his own want of care and lack of prudence, contributed to his injury and death. *Duggan* v. *Bay State Street Railway*, 230 Mass. 370. *Gagnon* v. *Worcester Consolidated Street Railway*, 231 Mass. 160. St. 1914, c. 553. Nor could it have been ruled rightly that there was no evidence of conscious suffering on the part of the intestate. *Mulchahey* v. *Washburn Car Wheel Co.* 145 Mass. 281.

As regards the issue of the defendant's negligence, the evidence warranted a finding that the right of the defendant to cut ice on the Merrimack River at the place where the accident to the intestate occurred at the most was that of a licensee of the riparian

owner of the land over which the frozen water rested. If we assume the defendant possessed, and was acting under, a license of the riparian owner, she nevertheless was bound in law to exercise that privilege with due regard to the safety of others who should come upon the ice of the river for passage, business or pleasure, justified by a license of the riparian owner or under a public prescriptive right. As licensees upon the land of another using the same locus at the same time each licensee owed a duty to the other to exercise his privilege and to conduct himself and the business which was there carried on under the license in a manner which foreseeably would not be reasonably likely to result in harm to others lawfully there using the river for a different purpose. Upon the facts the defendant had a right to cut ice on the river and the intestate had at the same time a right of passage for business or pleasure. In the enjoyment of their possibly conflicting rights it was the duty of the defendant and the intestate and of all others similarly situated each to exercise his or her right in a manner calculated to be most beneficial and least injurious to the others. And each would be answerable for the negligent disturbance of the rights of others. *Sughrue* v. *Booth*, 231 Mass. 538, 539. Upon the facts a finding would be warranted that the defendant knew that others, including the intestate, had the right to use the river for passage and knew that such others had used the ice for many years for skating. It also could warrantably have been found that the line of demarcation where the ice had been cut by the defendant between thick and thin ice, safe and unsafe ice for passage, was obscure and that a reasonable regard to the safety of such as should use the ice for passage required that the defendant should erect guards or place signals at or near the place where the ice had been cut and removed.

Upon the reported evidence it appears that the Merrimack River above the Pawtucket dam and at and above the place of the accident is navigable in fact in the sense that it is and long has been used for useful purposes of navigation, that is, for trade and travel in the usual and ordinary modes; but is not a navigable river above the dam in the sense that the tide there ebbs and flows. *Commonwealth* v. *Vincent*, 108 Mass. 441, 446. The stream being in that sense a non-navigable river, the defendant as a riparian owner had the exclusive right of fishing and gather-

ing ice in front of her own land, "subject, in Massachusetts, to· regulation for the common benefit, by the Legislature." *McFarlin.* v. *Essex Co.* 10 Cush, 304, 309, 310. She also had title to the bed or soil under the river, but subject "to an easement or right of' passage up and down the stream in boats or other craft for purposes of business, convenience or pleasure." *Ingraham* v. *Wilkinson,* 4 Pick. 268, 271. " . . . the property of the owners of the land on the banks of rivers is qualified, as well by the same common law itself, as by the ancient customs and legislation of our own government. The right of passage and of transportation upon rivers not strictly navigable, belongs to the public, by the· principles of the common law." *Commonwealth* v. *Chapin,* 5 Pick. 199, 202.

On any aspect of the evidence there were issues of due care and of negligence to be determined as questions of fact, and findings for the plaintiff would be warranted. The ruling and granting of the motion for a directed verdict for the defendant was error. It follows, in accordance with the terms of the report, that there should be a new trial.

*So ordered.*