ESSEX COMPANY *vs.* COMMONWEALTH.

Suffolk.    March 8, 9, 1923. — September 14, 1923.

Present: RUGG, C.J., BRALEY, DeCOURCY, CROSBY, & PIERCE, JJ.

*Corporation*, Domestic business corporation, Public service corporation, Canal company.    *Essex Company.    Tax*, Upon domestic business corporation.

The purpose for which a corporation is organized must be ascertained from its charter.

By the provisions of its charter, St. 1845, c. 163, Essex Company is a " canal " corporation.

While the history of Essex Company and its activities in 1920 showed beyond peradventure that the canal had become a comparatively insignificant part of its business, such nonuser did not operate as a surrender and forfeiture of the charter, the obligation to maintain the canal still resting upon it and the right to exercise all charter privileges with respect to being a canal company being unimpaired.

By reason of the provisions of the charter of Essex Company and of its history and activities in 1920, as shown by an agreed statement of facts in a petition to have abated a franchise tax assessed upon it in 1920 under St. 1909,

c. 490, Part III, §§ 40–43, now G. L. c. 63, §§ 53–60, it was *held*, that it was proper to assess a franchise tax upon the corporation as a canal corporation, expressly excluded by the provisions of St. 1910, c. 538, § 1, from the definition of a domestic business corporation, and that it was proper not to assess a tax upon it as a business corporation under St. 1919, c. 355, now G. L. c. 63, §§ 30–51.

Whatever may be thought about the charter power to exercise eminent domain for building the dam and creating a head of water, conferred upon Essex Company by § 3 of its charter, St. 1845, c. 163, there can be no doubt as to the constitutionality of a statute authorizing the exercise of eminent domain for the purpose of constructing a highway for travel such as the canal, authorized by that charter and afterwards constructed and used, was shown to be.

The fact that by § 3 of its charter, St. 1845, c. 163, Essex Company was given the right to take or condemn land within the Commonwealth, both for the dam and for the main canal for navigation, prevented it under St. 1910, c. 385, § 1, from classification as a domestic business corporation, subject to taxation under St. 1919, c. 355, now G. L. c. 63, §§ 30–51.

PETITION, under G. L. c. 63, § 77, filed in the Supreme Judicial Court on March 7, 1921, and afterwards amended, for the abatement of a franchise tax of $12,977.38, assessed upon the petitioner for the year 1920 under St. 1909, c. 490, Part III, §§ 40–43, now G. L. c. 63, §§ 53–60, the petitioner contending that, instead of such a tax, a tax should have been assessed upon it as a domestic business corporation under St. 1919, c. 355, now G. L. c. 63, §§ 30–51.

The facts were agreed upon. Material facts are described in the opinion. The petition was reserved by *Pierce*, J., upon the pleadings and an agreed statement of facts for determination by the full court.

*B. W. Warren*, (*H. Stockton, Jr.*, with him,) for the petitioner.

*A. Lincoln*, Assistant Attorney General, for the Commonwealth.

RUGG, C.J. This is a petition under G. L. c. 63, § 77, for the recovery of a franchise tax collected for the year 1920. The validity of the tax depends upon the correct answer to the question, whether the petitioner is taxable as a "domestic business corporation" within the meaning of those words in St. 1919, c. 355, § 1. It there is provided that "The term 'domestic business corporation' shall mean every corporation organized under or subject to the provisions of" St.

1903, c. 437, as amended. That act as amended applies to all corporations of the general class to which the petitioner belongs, with a proviso that " It shall not apply to corporations organized under general or special laws of this Commonwealth for the purpose of carrying on the business of a bank, savings bank, coöperative bank, trust company, surety or indemnity company, or safe deposit company, or to corporations organized under general or special laws of this Commonwealth for the purpose of carrying on within the Commonwealth the business of an insurance company, railroad, electric railroad or street railway company, telegraph or telephone company, gas or electric light, heat or power company, canal, aqueduct or water company, cemetery or crematory company, or to any other corporations which now have or may hereafter have the right to take or condemn land within the Commonwealth, or to exercise franchises in public ways granted by the Commonwealth or by any county, city or town."

1. Succinctly stated, the main point to be decided is whether the petitioner is a corporation organized for the purpose of carrying on the business of a canal company.

The purpose for which a corporation is organized must be ascertained from its charter. The petitioner was incorporated by a special act. St. 1845, c. 163. Its title is simply " An Act to incorporate the Essex Company." It consists of eleven sections. By § 1 certain persons " are hereby made a corporation . . . for the purpose of constructing a dam across Merrimack River, and constructing one or more locks and canals in connection with said dam, to remove obstructions in said river by falls and rapids . . . and to create a water power to use, or sell, or lease to other persons or corporations, to use for manufacturing and mechanical purposes." The corporation was authorized by § 2 to hold real estate not exceeding a specified value " exclusive of the expenditure for the dam and canals." By § 3 it was empowered " to construct and maintain a dam across said river . . . and all such canals and locks as may be necessary for the purposes aforesaid; and, for the purpose of making said dam, and constructing the main canal for navigation,

or transports, may take, occupy, and inclose any of the lands adjoining said canals and locks, or dam, which may be necessary for building or repairing the same, for towing paths, and other necessary purposes, not exceeding twenty feet on each side of said canal, or locks, and may blow up and remove any rocks in said river, and dig in any of the lands near to said river, through which it may be necessary to pass said main canal." By § 4 there is recognition of the right of the corporation " to make a canal across any public highway " and of the public to lay out highways " across such canal," and the duty is imposed on the corporation " to make sufficient bridges across said canal, and to keep them in good repair." The sole subject of § 5 is fishways in the dam. By § 6 the corporation was required to " erect, and forever maintain such canal and locks as shall be necessary around any dam constructed " by it. The minimum dimensions of the locks are specified; " and said canal shall be so constructed, that there shall be easy, safe, and convenient access to, and egress from, the same; with fastenings and moorings for the reconstruction of rafts or floats, after the egress; and shall be free and not subject to any charges whatever for the passage of rafts of wood and lumber, masts, and floats of timber, and be tended by a keeper employed by said corporation, and opened at all reasonable times, promptly, for such passage." Section 7 requires that the fishways in the dam " and the entrance and exit of said canal, and the moorings and fastenings at the exit, shall be made to the satisfaction of the county commissioners of the county of Essex," with detailed provisions as to the ascertainment of such satisfaction. By § 8 provision is made for the payment of damages to any person injured " in cutting or making canals through his lands, or by flowing the same." It is enacted by § 9 that " For the purpose of reimbursing said corporation in part for the cost and expense of keeping said locks and canals in repair, and in tending the same, and in clearing the passages necessary for the transit of boats and merchandise, and other articles through said canal, the following toll is hereby established and granted to said corporation on all goods,

boats, and merchandise, except rafts of wood and lumber, masts, and floats of timber passing down said canal, and on all goods carried up through said canal," followed by a detailed schedule of said tolls on a great variety of merchandise, concluding with the rate " on all articles of merchandise not enumerated," with the provision " that the rates of toll aforesaid shall be subject to the direction of the Legislature." Section 10 relates solely to the establishment of the height to which water may be flowed by the dam, and § 11 only to the time when the act shall take effect.

It appears from this analysis that, of the eleven sections of the act, three relate exclusively to canals and locks, one to canals and locks and to fishways, four to the dam and to canals and locks, one to fishways, one to the height of water to be raised by the dam, and one to the time when the act shall take effect. In printed space much more of the act of incorporation is devoted to canals and locks than to any other single subject, and more than to all other subjects combined. Manifestly the dam was useful, although by the agreed facts not essential, in its physical aspects to the use and operation of the canal as well as to the development and distribution of water power.

In a sense the act of incorporation recognizes the Merrimack River as a public highway, because by § 3 the " corporation shall not obstruct the passage of rafts, masts, or floats of timber down said river earlier than the first day of June, in building said dam, nor keep the same obstructed for a longer time than five months before the opening of said canal for the passage thereof." The canal is thus a substitute for the river for the uses of the general public for these purposes. Public duties in this respect indubitably are imposed on the corporation. Reference has already been made to other provisions of the act of incorporation, which impose upon the corporation performance of public duties respecting the navigation of the river in the sense of its uses for travel up and down the stream in boats and other craft for trade, business, convenience or pleasure. *Brosnan v. Gage*, 240 Mass. 113, 117, 118, and cases there collected. Whether it is navigable below the dam in the common law

sense that the tide there ebbs and flows is not shown on this record. Removal of falls and rapids as obstructions to navigation on the river would naturally be accomplished by use of the canal in conjunction with the dam as both were actually constructed.

The long specification of tolls to be charged for the use of the canal, the detailed provisions as to the construction of locks and the careful regulation respecting access to and egress from the canal are proof that at the time of the passage of the special act of incorporation the canal with its necessary accessories was regarded as highly important both by the incorporators and by the General Court. The erection and maintenance of the canal by the corporation was made imperative by §§ 6 and 7. It was not merely a part of a general franchise to be exercised or not at the option of the corporation.

The provision in § 1, to the effect that the corporation " shall have all the powers and privileges, and be subject to all the duties, and liabilities, and restrictions, set forth " in Rev. Sts. cc. 38 and 44, the business corporation laws of that time, is not enough to stamp the corporation solely as a business and not as a canal corporation. There was not then and has not been since a general law by name governing canal as distinguished from other corporations. Naturally reference was made to existing statutory provisions of a general nature governing corporations. The prefatory phrase in § 9, to the effect that, " For the purpose of reimbursing said corporation in part for the cost and expense " incident to the maintenance and operation of the locks and canals, the corporation may charge the specified tolls, does not show that the canal and locks were merely an incident of the main corporate purpose of the defendant.

Inspection of the act alone, apart from the subsequent history of the corporation, well might lead to the conclusion that more emphasis was placed upon the construction and operation of the canal than upon the creation of a water power for use or for sale or lease to others. As matter of construction of the act of incorporation, it cannot be held that the development of power was the dominant purpose

for which the company was organized and the canal only incidental and subsidiary. The case in this particular is distinguishable from cases like *Selectmen of Wellesley* v. *Boston & Worcester Street Railway*, 188 Mass. 250; *Mount Hermon Boy's School* v. *Gill*, 145 Mass. 139, and *Tulane University of Louisiana* v. *O'Connor*, 192 Mass. 428, upon which the petitioner relies.

The case at bar also is distinguishable from other instances of corporations with one paramount purpose compulsorily or voluntarily assuming other incidental and subsidiary functions partaking of a different nature without affecting their chief and inherent character. See, for example, G. L. c. 164, § 83; c. 165, § 2.

The history of the corporation and its present activites as set forth in the agreed statement of facts show beyond peradventure that the canal has become a comparatively insignificant part of the business of the defendant. Tolls have never been charged on goods or boats or anything passing through its canal. The maintenance of the canal as a means of travel and navigation is a burden and not an advantage to the petitioner. Judged by a survey today of the corporate energies of the petitioner, it would be regarded as a business and not as a canal corporation.

The obligation to maintain the canal, however, still rests on the corporation. The right to exercise all charter privileges with respect to being a canal corporation is unimpaired. That was granted absolutely by the Legislature by the act of incorporation. Its continuance was not made subject to any condition or limitation as to use or profit or receipt of tolls. Nonuser does not operate as a surrender or forfeiture of the charter. *Heard* v. *Talbot*, 7 Gray, 113, 119. *Attorney General* v. *Massachusetts Pipe Line Gas Co.* 179 Mass. 15, 19. Such nonuser may be the basis of proceedings by the Attorney General to have the charter declared forfeited. *Attorney General* v. *Adonai Shomo Corp.* 167 Mass. 424. *Attorney General* v. *Methuen*, 236 Mass. 564, 580, 581. This is very different from treating charter rights as nonexistent in any other way.

The result follows in the opinion of a majority of the court

that the petitioner is a canal corporation and was liable to the excise under St. 1909, c. 490, Part III, §§ 40–43, and not under St. 1919, c. 355.

This conclusion, although supported by the remark in *Essex Co.* v. *Lawrence,* 214 Mass. 79, 87, to the effect that the petitioner was a canal corporation " in some aspects of its charter duties," has been reached independently of that decision.

All the factors set forth in the record are not sufficient to overcome the provisions in the charter of the petitioner which stamp it as a canal corporation as well as a business corporation.

It may be that this result works a hardship upon the petitioner in view of present conditions respecting the use and value of its franchise to be a canal corporation. But that cannot be regarded as a significant matter by courts in the construction of tax laws, which must be interpreted according to their words and not according to their spirit. *City National Bank* v. *Charles Baker Co.* 180 Mass. 40.

2. The petitioner cannot rightly be taxed solely as a domestic business corporation for a further reason.

The " right to take or condemn land within the Commonwealth," which is one of the expressed characteristics of corporations excluded from the provisions of St. 1919, c. 355, § 1, is conferred upon Essex Company by the words of § 3 of its charter both with relation to the dam and to the main canal for navigation. Whether at this moment the corporation, in view of the constructions already made, could put forth that power need not be decided. When the purposes of the charter have been accomplished, that power doubtless has been exhausted. *Brigham* v. *Agricultural Branch Railroad,* 1 Allen, 316. But the power cannot be thought thereby to be extinguished. If and when a further exercise of the power becomes necessary to repair misfortune or disaster, or to make replacements arising from injuries wrought by *vis major* or other cause, the corporation possesses the right to rehabilitate itself and to put itself in a position to continue all its corporate functions. Indeed, it appears that the corporation has never had occasion yet to avail itself of this power.

But it has continued possession of the power for the public purposes for which it was chartered. *Hopkins* v. *Philadelphia, Wilmington & Baltimore Railway,* 94 Md. 257. *Childs* v. *Central Railroad,* 4 Vroom, 323. *Burkhard* v. *Pennsylvania Water Co.* 234 Penn. St. 41. *Mead* v. *Portland,* 200 U. S. 148, 164. *Goszler* v. *Georgetown,* 6 Wheat. 593, 595. Whatever may be thought about the charter power to exercise eminent domain for building the dam and creating a head of water, there can be no doubt as to the constitutionality of a statute authorizing the exercise of eminent domain for the purpose of constructing a highway for travel such as this canal is shown by the charter to be. *Boston* v. *Treasurer & Receiver General,* 237 Mass. 403, 414. The effect of this provision as to eminent domain also is to exempt the petitioner from the application of the excise tax of business corporations and place it in the other classification adopted by the commissioner in levying the tax. See St. 1910, c. 385, § 1, in final paragraph.

*Petition dismissed.*