BOSTON SAFE DEPOSIT AND TRUST COMPANY, trustee, *vs.* HENRY STRATTON & others.

NEW ENGLAND TRUST COMPANY, trustee, *vs.* HENRY STRATTON & others.

Middlesex.  October 21, 1926. — May 20, 1927.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Devise and Legacy,* Vested interest, Contingent interest.  *Executor and Administrator.  Corporation,* Educational: lapse by nonuser.  *Equity Jurisdiction,* Bill for instructions.  *Equity Pleading and Practice,* Decree pro confesso.  *New Salem Academy.  Words,* "Heir at law."

The rule governing the construction of wills is that the intention of the testator is to be ascertained from the whole instrument, attributing due weight to all its language, and then effect given to that intent unless prevented by some positive rule of law.

A testator by a clause in an elaborate and carefully drawn will established a trust fund of $50,000 and provided that after the death of all beneficiaries who were to receive the income during their lives and at the death of his son and daughter leaving no issue the fund should be divided into three unequal parts.  As to the first part, he provided as follows: "I direct my said trustees to pay from said fund to my cousin . . . if he be then living and if he be not living to his widow and daughter,

share and share alike or to the survivor of them the sum of five thousand dollars." There were no specific provisions for a gift over in case the cousin's widow and daughter did not live so that they personally might enjoy the fund. As to the other parts of the fund, there were such provisions. The wife of the cousin died in 1887; the cousin died two months later; his daughter died in 1900, testate; both children of the testator died without issue, the survivor dying in 1925. Upon a construction of the language of the whole will, it was *held*, that

(1) The testator intended that the gift to the daughter of the cousin should not be subject to the condition that she be alive at the death of the life beneficiaries and of his son and daughter without issue;

(2) The testator intended by the words he used to make full and final disposition of the $5,000;

(3) Upon the death of the cousin before the life beneficiaries and the son and daughter of the testator without issue, an interest vested in the cousin's daughter which was transmissible by her will and which became free and clear and passed by her will on the death of the testator's son and daughter without issue.

The will of the daughter of the cousin of the testator above described left the residue of her property to her husband. The husband survived her and died in 1909, leaving a will giving his property to a charitable corporation. The executor of the will of the daughter had settled her estate and had died. The estate of the husband had been settled by an administrator with the will annexed of the estate not already administered, who had died. *Held*, that, since it seemed likely that all debts of these estates were either paid or barred, there was no objection to the payment by the trustee directly to the charitable corporation without the appointment of an administrator *de bonis non* with the will annexed of either of such estates.

On the death of the life beneficiaries and of the son and daughter of the testator without issue, $25,000 of the trust fund above described was directed to be paid to the trustees of the New Salem Academy, they "to pay over the income thereof to said Institution so long as it continues to be an institution of learning — but whenever it ceases to be an institution of learning I direct said Trustees to pay said principal sum of twenty five thousand dollars to my heirs at law." It appeared that the trustees of New Salem Academy were incorporated in 1795, that the corporation still was in existence, owned property, and coöperated with the school board of New Salem in the maintenance of an educational institution there. In the circumstances, it was *held*, that the New Salem Academy had not ceased to exist, but on the contrary "continues to be an institution of learning" within the meaning of those words in the will, and that the corporation was entitled to receive the $25,000 from the fund.

A decree that a bill by a trustee under a will for instructions be taken *pro confesso* as to certain defendants is interlocutory; and, although all other parties agree to the entry of a decree making a certain disposition of a part of the fund, such agreement does not bind the defendants as to whom the decree *pro confesso* was entered, but the court must examine the allegations of the bill and decide that they are sufficient to authorize

relief before a final decree as agreed upon can be entered in accordance with the frame of the bill.

The parties to the suit above described, except those as to whom the bill was taken *pro confesso*, having agreed that certain payments should be made under certain trusts in the will of the plaintiff's testator to the executor of the will of the testator's daughter, *it was stated* that it was not necessary to examine with nicety the legal effect of such parts of the will, since, whatever might be the precise nature of the estates created by their provisions, in any event the interest after the life estates ultimately vested in the daughter and was to be disposed of by her will.

PETITION, filed in the Probate Court for the county of Middlesex on August 25, 1925, by the trustee under the will of Ira Stratton, late of Cambridge, for instructions. Also, a

PETITION, filed in the same court on the same date by the trustee of one third of the residuary estate under the seventh clause of the same will, for instructions.

The petitions were heard by *Leggat*, J., who found, among other facts, those stated in the opinion, and reserved and reported the suits to this court for determination.

The will of Ira Stratton, which was dated January 31, 1872, contained nine clauses. The first clause gave directions as to the testator's burial and the payment of his debts and funeral expenses. The second clause gave his wife "all my household furniture, books, pictures and consumable stores." The third clause gave L. Maria Stratton, daughter of Royal A. Stratton, $1,000.

The fourth clause gave $50,000 to trustees subject to the following trusts: "to invest said money as they receive the same in town, county, State & United States securities or mortgages on Real Estate — not more than one half their assessed value on dwelling houses and not more than two thirds their assessed value on brick or stone stores and the same or any part thereof to sell and convey whenever they may judge it fit and proper so to do and the proceeds to re-invest in like securities and so again to sell and reinvest, whenever, as often (but in like securities) as they may deem expedient — to collect the income, interest, dividend and profits thereof and after deducting all expenses to pay over the net income to my wife Martha A. Stratton by equal quarterly payments in every year during her natural life

either into her own hand or upon her order or receipt in writing given at the time for her sole, separate and exclusive use free from the control or interference of any husband and from being subject to his debts or control.

"And at the death of my wife aforesaid to pay over the net income thereof in equal parts quarterly, to my son Flavel Coolidge Stratton and my daughter Martha L. Stratton during their natural lives; and if either of them die without issue then to pay the whole of said net income to the survivor during his or her natural life — And if either the said Flavel C. or Martha L. dies leaving issue — then to pay one half of said income to the survivor during his or her natural life and the other half of said income to the issue of said deceased child during the life of said survivor.

"And at the decease of both my son and daughter to pay over and distribute said trust fund among such issue of my said children as may then be living, share and share alike. And if said Flavel C. and Martha L. shall die without issue then I direct my said trustees to pay from said trust fund to my cousin Royal A. Stratton of New Salem, Franklin County, Mass. if he be then living and if he be not living to his widow and daughter, share and share alike or to the survivor of them the sum of five thousand dollars — and to pay and convey over to the Trustees for the time being of the New Salem Academy located in New Salem, Mass. the sum of twenty five thousand dollars to be held in trust by them, to invest said twenty five thousand dollars and to pay over the income thereof to said Institution so long as it continues to be an institution of learning — but whenever it ceases to be an institution of learning I direct said Trustees to pay said principal sum of twenty five thousand dollars to my heirs at law; — And to pay and convey over the balance of said fifty thousand dollars — to wit: the sum of twenty thousand dollars to my heirs at law — "

By the fifth clause, $50,000 was given to trustees subject to the following trusts: "to hold the same in the same manner and with the same powers hereinbefore given them in item fourth of this will, upon the trust to pay the net income arising from said fifty thousand dollars to my son Flavel Coolidge

Stratton in equal quarterly payments in each year during his natural life and at his decease to pay over and distribute said trust fund among such of his children as may then be living and to the issue of any deceased child taking by right of representation. And if the said Flavel C. Stratton shall die leaving no issue to pay over and convey said trust fund to such person or persons as he the said Flavel C. Stratton may by his last will and testament appoint to receive the same — And in failure of such issue and such appointment by will at the death of said Flavel C. Stratton to pay over and distribute said trust fund among my heirs at law."

The sixth clause placed $50,000 with trustees "to hold the same in the same manner and with the same powers hereinbefore given them in item fourth of this will; upon the trust to pay the net income arising from said fifty thousand dollars to my daughter Martha L. Stratton in equal quarterly payments in each year during her natural life either into her own hand or upon her order or receipt in writing given at the time free from the control or interference of any husband and from being subject to his debts or control — And at her decease to pay over and distribute said trust fund among such of the children of said Martha L. Stratton as may then be living and to the issue of any deceased child taking by right of representation but if she dies leaving no issue then to pay over and distribute said trust fund between my wife Martha A. Stratton and my son Flavel C. Stratton or if either of them have deceased to pay said trust fund to the survivor."

The seventh clause provided as follows:

"All the rest and residue of my estate of which I shall die seized or possessed or to which I may be entitled at the time of my decease I give devise and bequeath as follows—namely — One third part thereof to my wife Martha A. Stratton, to have and to hold the same to her and her heirs and assigns forever — One third part thereof to my son Flavel Coolidge Stratton to have and to hold the same to him his heirs and assigns for ever — One third part thereof to the said Lucius R. Paige and Robert Douglass to hold the same in trust in the same manner and with the same powers hereinbefore set forth in item fourth of this will to pay the net income arising

therefrom to my daughter Martha L. Stratton in equal quarterly payments during her life and at her death to pay over said trust fund to such of her children as may then be living and the issue of any deceased child taking by right of representation — And in failure of such issue to pay over and distribute said fund between said Martha A. Stratton and Flavel C. Stratton or to the survivor of them if but one be living at the time of the decease of said Martha L. Stratton — Provided however that if said Martha L. may so desire my said Trustees may from this trust fund purchase for the said Martha L. Stratton a dwelling house suitable for her condition in life, the deed thereof to be taken in the name of said Martha L. as her sole and separate property, or in the name of said Trustees as they may deem best."

The eighth and ninth clauses related to the appointment of executors and trustees and their bonds.

*C. M. Rogerson,* for the plaintiff Boston Safe Deposit and Trust Company, stated the first case.

*B. E. Eames,* for the plaintiff The New England Trust Company, stated the second case.

*H. F. Knight,* for Edith L. Stratton and others.

*A. E. Pillsbury,* for Massachusetts Society for the Prevention of Cruelty to Animals.

*E. C. Jenney,* (*S. Robinson* with him,) for Trustees of Tufts College.

*K. A. Sanderson,* for Henry Stratton and others.

*J. D. Graham,* for Trustees of New Salem Academy.

*W. C. Rice,* for the executor of the will of Martha S. Ensign, submitted a brief.

RUGG, C.J.   These are petitions for instructions as to the meaning of clauses in the will of Ira Stratton.

The rule for the construction of wills, briefly stated, is that the intention of the testator is to be ascertained from the whole instrument, attributing due weight to all its language, and then to give effect to that intent unless prevented by some positive rule of law.   *Ware* v. *Minot,* 202 Mass. 512, 516.   *Temple* v. *Russell,* 251 Mass. 231, 535.

The testamentary words and the facts to which this rule is to be applied in the case at bar are as follows: By clause

Fourth of his will the testator created a trust fund of $50,000, the income to be paid to life tenants, all of whom are now deceased. The will then proceeds, "And at the decease of both my son and daughter to pay over and distribute said trust fund among such issue of my said children as may then be living, share and share alike." Both son and daughter have died, leaving no issue. In this event the testator made provision for the division of this particular trust fund into three unequal parts, with special and differing words of gift as to each part. As to the first part, the testamentary words now operative, and to be construed, are these: "I direct my said trustees to pay from said trust fund to my cousin Royal A. Stratton . . . if he be then living and if he be not living to his widow and daughter, share and share alike or to the survivor of them the sum of five thousand dollars." The circumstances which have arisen and with reference to which the intention of the testator as displayed by these words must be discovered, are these: The last life tenant, who was also the last surviving child of the testator, died in 1925, Royal A. Stratton died in April, 1887, his wife in the preceding February, and their daughter in August, 1900, she having left a will in which her husband, also now deceased, testate, was the residuary legatee.

We are of opinion that under the frame of the will the testator intended that this $5,000 should go to his cousin Royal if he survived the life tenants, and, if he did not so survive, then to his widow and daughter and the survivor of them, absolutely, subject only to the contingency that no issue should survive the testator's own children. The gift to the cousin Royal is made subject to the condition that he be alive at the death of the life tenants without issue; but the gift to the widow and daughter of Royal is not made upon that condition. Their right is free from that condition expressly attached to the gift to Royal. Such omission in this context is significant. There is no gift over of this $5,000 in the event that neither the widow nor daughter of Royal live to enjoy the legacy in person. Gifts over are made in specific terms of the other two parts of the $50,000 trust fund created

by clause Fourth.   That is some indication of a testamentary thought that the $5,000 part of that fund here under consideration had been disposed of fully and finally by the words expressly relating thereto.   This conclusion is aided by the general presumption against partial intestacy in an elaborate and carefully drawn will.   *Jones* v. *Gane*, 205 Mass. 37, 43. The gift to Royal A. Stratton and his widow and daughter was contingent upon the death of the two children of the testator without issue, but it was vested in the widow and daughter and the survivor of those two subject to that contingency and to the further condition that Royal A. Stratton should predecease them or either of them.   The result is that in the circumstances here disclosed the interest in this $5,000 vested in the daughter of Royal A. Stratton dependent upon the contingency that there might be issue of the son or daughter surviving them.   Upon the removal of that contingency by the events which have come to pass, title in her and in her estate became free and clear.   Having become a vested interest in a contingent remainder by the predecease of her father and mother long before the termination of the last life estate, it was transmissible and became a part of her estate.   It was not dependent upon her survival of the life tenants.   *Cummings* v. *Stearns*, 161 Mass. 506, 508.   *Clarke* v. *Fay*, 205 Mass. 228, 231–236, and cases there collected. *O'Brien* v. *Lewis*, 208 Mass. 515, 518.   *Porter* v. *Porter*, 226 Mass. 204.   *Stowell* v. *Ranlett*, 238 Mass. 599, 604.   *Porter* v. *Molloy*, 254 Mass. 398.

The daughter of Royal A. Stratton, as already has been stated, died in 1900, and her executor has administered her estate and died.   She left the residue of her estate to her husband, who died testate in 1909.   His estate was settled by an administrator with the will annexed, who has since died.   All the property of her husband by his will was given to "The Massachusetts Society for the Protection of Dumb Animals," by which it is assumed that the defendant, The Massachusetts Society for the Prevention of Cruelty to Animals, was meant, because the residue of his estate has been paid to this defendant.   In these circumstances it seems likely that all debts of these estates are either paid or

barred, and there is no objection to direct payment to this society without the appointment of an administrator *de bonis non* with the will annexed of either estate. *Buswell* v. *Newcomb,* 183 Mass. 111, 114. *Minot* v. *Purrington,* 190 Mass. 336, 342. *State Street Trust Co.* v. *Morris,* 218 Mass. 429, 431. *Springfield Safe Deposit & Trust Co.* v. *Dwelly,* 219 Mass. 65, 71.

The testamentary words as to the second part of the trust fund created and distributed by clause Fourth are these: "I direct my said trustees . . . to pay and convey over to the Trustees for the time being of the New Salem Academy located in New Salem, Mass. the sum of twenty five thousand dollars to be held in trust by them, to invest said twenty five thousand dollars and to pay over the income thereof to said Institution so long as it continues to be an institution of learning — but whenever it ceases to be an institution of learning I direct said Trustees to pay said principal sum of twenty five thousand dollars to my heirs at law."

The facts with reference to which these testamentary words must be interpreted are these: The testator was a graduate of New Salem Academy, as was also his son. In 1856 the testator gave $1,000 to the Academy. The trustees of New Salem Academy were incorporated in 1795 by c. 44, acts of 1794–1795, which is still in force and has never been amended. The trustees have continued to hold regular meetings from 1795 to the present. In 1797 and in 1869 substantial grants were made by the Commonwealth to this corporation. No question is made that prior to 1895 the trustees of the Academy conducted an institution for learning in New Salem. In 1872, when the will of the testator was executed, the trustees had funds in their possession amounting to about $15,000. The school was maintained from the income of these funds and such sums as were paid for tuition. The trustees had the entire management of the institution. They owned three buildings, together with land, one known as the Old Academy and the others as boarding houses. In 1908 they erected another building known as the New Academy building. During the period prior to 1900 there was no other school of high school grade in the town of New

474 BOSTON SAFE DEPOSIT & TRUST CO. v. STRATTON. [259

Salem. Between 1900 and 1901 the trustees gave over to the town the entire control of the school, to be exercised by the school committee of the town. Thereafter the trustees have continued to own the buildings and the real estate, while the school has been conducted in the buildings under the exclusive management of the school committee, although the trustees have advised with the school committee. All tuition fees have been paid to the town. The trustees have issued catalogues of the school. The trustees establish a rate per year for room, board and tuition for pupils who come from other towns having high schools. A part of this sum is turned over to the town as tuition fixed by it, a part to the person who runs and heats the boarding house, and a part to the trustees. The part turned over to the trustees is used for keeping the buildings in repair. The trustees have not since 1900 instructed the youth, nor elected the teachers, nor passed on the qualifications of students for admission to the school, nor made the returns required by G. L. c. 69, § 4, nor has the Academy been approved under G. L. c. 76, § 1. The diploma awarded to graduates bears the heading "New Salem Academy" and is signed by the chairman of the board of trustees as well as of the school committee and the principal, but its body refers only to the high school. Since 1919, arrangements theretofore existing by word of mouth as to the use of the property of the trustees by the town have been in writing. Rent of $500 per year is reserved to the trustees, but it has been repaid by them to the town. The trustees retain exclusive control over the two buildings known as boarding houses, and let rooms and furnish board to pupils and teachers and others, for which they receive money. They also let these buildings in part, and other property owned by them, for other purposes and derive revenue therefrom. The trustees own certain wood lots where they cut cord wood which they sell to the town for use in heating the buildings occupied by the high school, the library and other town schools. The trustees now have funds amounting to between $50,000 and $52,000. They use the profits received by them from the various rentals above enumerated, the interest from their said funds and the money derived from the sale of wood

for no other purposes than those of keeping their several buildings in repair, and in paying certain sums to the town of New Salem each year for use by the town for the agricultural course in the school and for the commercial course in said school. The trustees bought and cleared a field in 1924, which since that time has been used by the school as an athletic field. In 1924 the trustees of New Salem Academy paid to the town of New Salem the sum of $980.50 for the general purposes of the high school, and the sum of $478.08 for the agricultural department, making a total of $1,458.55. Until 1923 the trustees purchased textbooks for the agricultural course in the school.

The New Salem Academy was incorporated and established "for the purpose of promoting piety, Religion & Morality, and for the instruction of Youth in such Languages, & in such of the liberal Arts & Sciences as the Trustees shall direct." Numerous other powers respecting the receipt of gifts, the holding of property, the management of the institution, and the exercise of numerous named and incidental functions accompanying the maintenance of an academy, are conferred by the charter. It is manifest that the educational corporation established by the charter of 1795 continues to exist. It maintains its corporate organization and performs corporate functions. *Essex Co.* v. *Commonwealth,* 246 Mass. 242, 248. *Opinion of the Justices,* 237 Mass. 619, 623. *Syrian Antiochean Church* v. *Ghize,* 258 Mass. 74, 80, 81. The inference is justifiable that, with the resources now at the command of the corporation, it hardly could maintain a school of high school grade without aid from some other source. It coöperates with the town, apparently in every practicable way, in the maintenance of an educational institution in New Salem. Its substantial income as well as the use of its buildings is contributed to that cause. To a material degree an educational institution of higher grade and wider opportunity and better instruction is maintained in the town of New Salem by reason of the exercise of its corporate functions by the trustees of the Academy than would be possible in any other way. Seemingly the trustees of the Academy work harmoniously with the town, so far as permissible under pres-

ent constitutional provisions and the resources of the Academy, to provide an institution of learning in New Salem. The New Salem Academy has not ceased to be but on the contrary "continues to be an institution of learning" as those words are used in the will of the testator; and it is entitled to receive the $25,000 disposed of by the second part of clause Fourth. No case has come to our attention precisely like the present, but the governing principle is illustrated by several of our decisions. *Attorney General* v. *Butler*, 123 Mass. 304. *Crane* v. *Hyde Park*, 135 Mass. 147. *Quincy* v. *Attorney General*, 160 Mass. 431. *Capen* v. *Skinner*, 177 Mass. 84. *Dickey* v. *Putnam Free School*, 197 Mass. 468. *Thayer Academy* v. *Braintree*, 232 Mass. 402, 408. *Reed* v. *Fogg*, 248 Mass. 336. The case at bar is quite distinguishable from *Stone* v. *Framingham*, 109 Mass. 303, where an act of the Legislature in substance and effect had authorized the extinguishment of the charitable corporation and that act had been accepted by it.

The bills have been taken *pro confesso* as to two defendants therein named, and decrees to that effect were entered. These were interlocutory and not final decrees. *Hutchins* v. *Nickerson*, 212 Mass. 118, 119. All the other parties to the record have filed a stipulation to the effect that decree may be entered, respecting the $20,000 given by the final words of clause Fourth of the will of Ira Stratton to his heirs at law, and the sum held under clause Sixth of said will, and the last one third held under clause Seventh, that these several sums shall be paid to The New England Trust Company as it is executor under the will of Martha L. S. Ensign, the daughter of the testator, to be distributed in accordance with the terms of her will.

Such stipulation binds the parties thereto. But it does not purport to bind those against whom the bills have been taken *pro confesso*. When a bill is taken *pro confesso*, the truth of the facts pleaded is thereby established. But even after a decree *pro confesso* the court must examine the allegations of the bill and decide that they are sufficient to authorize relief before a final decree can be entered in accordance

with the frame of the bill. *McArthur* v. *Hood Rubber Co.*
221 Mass. 372, 375, and cases there collected. *Forbes* v.
*Tuckerman,* 115 Mass. 115, 120.

Therefore it becomes necessary to consider these several
testamentary provisions. The words of clause Fourth
touching the $20,000 are simply that at the termination of
the life estate it shall be paid and transferred "to my heirs
at law." The familiar and general rule of construction is
that, unless a contrary intention plainly is manifested by
the words of the will, estates shall be regarded as vesting
immediately upon the death of the testator, and that his
heirs at law are to be ascertained at that time. *Boston Safe
Deposit & Trust Co.* v. *Blanchard,* 196 Mass. 35, 38. *Welch*
v. *Colt,* 228 Mass. 511, 513, and cases collected. *State
Street Trust Co.* v. *Sampson,* 228 Mass. 411. *Mullaney* v.
*Monahan,* 232 Mass. 279, 281. *Hedge* v. *State Street Trust
Co.* 251 Mass. 410. *Ball* v. *Hopkins,* 254 Mass. 347. That
rule is applicable to this part of clause Fourth.

The gift in clause Sixth is that, upon the termination of the
life estate for the benefit of the daughter of the testator, the
principal of the trust shall be paid to such of her children or
issue of deceased child as may then be living; but, if she dies
leaving no issue, (the event which happened,) then "to pay
over and distribute said trust fund between my wife Martha
A. Stratton and my son Flavel C. Stratton or if either of
them have deceased to pay the said trust fund to the sur-
vivor." Clause Seventh is the residuary clause. Thereby
the residue is divided into three equal parts. The part
whereby one third is given to trustees to hold for the benefit
of the testator's daughter during her life alone is material
at present. She having died without issue, the words of the
will direct the trustees "in failure of such issue to pay over
and distribute said fund between said Martha A. Stratton
and Flavel C. Stratton or to the survivor of them if but one
be living at the time of the decease of said Martha L.
Stratton." Martha A. Stratton, the widow of the testator,
died intestate in 1890, leaving as her only heirs at law and
next of kin the two children of herself and the testator.
The son, Flavel C. Stratton, died in 1906 intestate, without

widow or issue, leaving as his only heir at law and next of kin his sister, the daughter of the testator and the life tenant of this third part of the residue.

It is not necessary to examine with nicety the legal effect of these parts of the will. Whatever may be the precise nature of the estates thus created, whether vested remainders in the widow and son or the survivor of them, or whether the property is not disposed of by the will in the events that have happened and hence is intestate estate, it is enough to say that in any event the remainder after the life estate ultimately vested in the daughter and is to be paid to the executor of her will, and must be paid to it in accordance with the stipulations filed.

Whether costs as between solicitor and client to the several parties ought to be paid out of the fund, is to be in the discretion of the Probate Court.

*Decrees to be entered accordingly.*