## LUCAS v. SWAN.
### No. 3498.

Circuit Court of Appeals, Fourth Circuit.
Oct. 3, 1933.

John S. Stump, Jr., of Clarksburg, W. Va. (Howard L. Robinson, of Clarksburg, W. Va., on the brief), for appellant.

S. T. Spears, of Elkins, W. Va., and Hardin R. Harmer, of Shinnston, W. Va., for appellee.

Before PARKER and SOPER, Circuit Judges, and WATKINS, District Judge.

PARKER, Circuit Judge.

This is an appeal in an action instituted by the receiver of the failed First National Bank of Shinnston, W. Va., to recover from one of the indorsers on a negotiable promissory note held by the bank. The note was a demand note for the sum of $11,000, payable at the bank, and was dated December 30, 1927. It was executed by the Derbrah Silk Company, a corporation of Pennsylvania, was made payable to maker, and was indorsed by the maker and five other persons, among whom was the defendant. It was the fifth renewal of a note executed September 10, 1924, and originally given for the sum of $14,000, but subsequently, upon one of the renewals, reduced to $11,000.

The notice of motion, which was the pleading of plaintiff, in addition to alleging presentment for payment at the bank, dishonor, and notice to defendant, alleged that the

maker was a fictitious or nonexistent person, that the note was accepted by the bank for the accommodation of the defendant, and that defendant as a result of being a director both of the bank and the silk company must be held to have waived demand, presentment, and notice of dishonor, and to be estopped from setting up lack of these as a defense. The defendant filed "Particulars of Defense" alleging that he was an accommodation indorser of the note sued on, that there had been no presentment or demand for payment, that necessity therefor had not been excused or waived, and that notice of dishonor had not been given defendant, nor had same been waived or excused.

The evidence showed that the proceeds of the original note had gone to the silk company and had been used in large part for the payment of the obligations of that company then outstanding; that the note had been renewed from time to time upon the indorsement of the same persons who had indorsed the original instrument; and that the defendant, who was a director of the silk company as well as of the bank, had been present at the meetings of the bank's directors when the renewal of the note was approved. It appeared also that the silk company was wholly insolvent and for some time before the institution of the action on the note had had no assets whatever. Its president had filed with the department of revenue of Pennsylvania in the year 1926, an affidavit showing that it had ceased to do business in 1923, that its assets had been distributed in payment of debts, and that since that time it had owned no property, and the purpose for which it had been chartered had been permanently abandoned. The records of the department of revenue show that, on the strength of this affidavit, the silk company was marked "out of existence" on April 27, 1928. The evidence, however, is that this entry is used merely to indicate that the corporation has been dropped from the list of those from which the revenue department collects taxes. It does not result in the dissolution of the corporation under the law; and it may later register anew, upon filing returns and paying a nominal tax for the years during which it has been inactive. Defendant denied that he knew that the silk company was without assets until late in the year 1928, some time after the execution of the note sued on.

The receiver testified that, in August after he took charge of the bank, he declared the note due and payable, exhibited it to the defendant at the bank, and advised defendant that he was looking to him for payment; that defendant requested time for the handling of the note; and that time was granted him. He further testified that the maker of the note and the other indorsers were insolvent and that he was looking for payment to the defendant alone. Defendant denied any presentation or demand; and testified that he had no notice that he was to be held for the note until he received a letter from the attorney for the receiver, notifying him that the note must be paid. The trial judge instructed the jury that if they believed from the evidence that the plaintiff looked to the defendant for the payment of the note and demanded payment of him, and that defendant knew that plaintiff looked to him and demanded payment, then formal presentment, demand, and notice were dispensed with, and they should find for plaintiff.

There was verdict for plaintiff; and from judgment thereon defendant has appealed assigning a number of errors, the one principally relied upon being the instruction to which we have referred. Plaintiff contends that the charge as given was correct, and that the judgment should not be disturbed on the additional grounds: (1) That, the maker being "out of existence," the indorsers were liable as makers, and that presentment for payment, demand, and notice of dishonor were not necessary to charge them; (2) that these were unnecessary for the further reason that defendant was an accommodated indorser; (3) that demand for payment was made upon defendant and no additional notice or demand was necessary; and (4) that presentment and notice were waived by the conduct of the defendant.

We think it clear that the instruction complained of was erroneous. Even though the maker of a note be insolvent, it is necessary that it be presented for payment in accordance with its terms, and that notice of dishonor be given the indorsers in order to hold them. Grandison v. Robertson (C. C. A. 2d) 231 F. 785, 797; Nolan v. H. E. Wilcox Motor Co., 137 Tenn. 667, 195 S. W. 581; Haynes Automobile Co. v. Shepherd, 220 Mich. 231, 189 N. W. 841, 25 A. L. R. 930 and note at page 963. The vice of the instruction is that it makes the liability of the indorser depend, not upon the presentment for payment and notice of dishonor, which under the contract of the indorser are conditions of liability (Grandison v. Robertson, supra [C. C. A.] 231 F. 785, at page 797; Case v. McKinnis, 107 Or. 223, 213 P. 422, 32 A. L. R. 167, 179), but upon the mental

attitude of the plaintiff and knowledge of same on the part of the defendant. It is true that the instruction couples with this the matter of demand; but it is elementary that mere demand upon the indorser is not sufficient to charge him, in the absence of presentment and notice of dishonor, unless the case is one where presentment or notice åre not necessary, or unless these have been waived. Case v. McKinnis, supra; 8 C. J. 525 and cases cited. In most cases where the maker is insolvent, the holder looks to the indorsers for payment and the indorsers know that they are being looked to, but this is no reason why the holder should not comply with the conditions upon which the liability of the indorsers depends.

And we see nothing in the position that presentment and notice were dispensed with because the silk company had disposed of its assets and been marked "out of existence" on the records of the revenue department of the state of Pennsylvania. So far as the evidence shows, the corporation had not been dissolved or its charter surrendered. It had the power, therefore, whether it had assets or not, to enter into contracts. It was a real person within contemplation of law, and not a fictitious person, or person not having capacity to contract, as was necessary to come within the provisions of section 115, subd. 1, of the Negotiable Instruments Law (Code W. Va. 1931, 46-7-27, subd. (a). It is well settled that a corporation does not cease to exist because it has become insolvent or has lost its property and ceased to carry on the business for which it was chartered. Brock v. Poor, 216 N. Y. 387, 111 N. E. 229; Essex Co. v. Commonwealth, 246 Mass. 242, 141 N. E. 38; Jones Mining Co. v. Cardiff Min. & Mill. Co., 56 Utah, 449, 191 P. 426.

Equally without foundation is the position that the defendant was an accommodated indorser, and hence not entitled to notice under section 115, subd. 3, of the Negotiable Instruments Law (Code W. Va. 1931, 46-7-27, subd. (c). An indorser is accommodated when the maker, drawer, or acceptor of a negotiable instrument makes, draws, or accepts same for his benefit, and without consideration. See N. I. L. § 29 (Code W. Va. 1931, 46-2-6). The maker here was the person accommodated and primarily liable; and the indorsers were accommodation indorsers for the maker. Case v. McKinnis, supra, 107 Or. 223, 213 P. 422, 32 A. L. R. at page 181; Murray v. Third Nat. Bank of St. Louis (C. C. A. 6th) 234 F. 481; McDonald v. Luckenbach (C. C. A. 3d) 170 F. 434. The fact

that the original note was renewed from time to time and that the liability of the indorsers might have been enforced if renewals had not been granted does not change their relationship. Brannan Neg. Inst. Law (4th Ed.) p. 717; Nolan v. Brown, 152 La. 333, 93 So. 113; Maynard Trust Co. v. Furbush, 243 Mass. 190, 137 N. E. 270. It was still the debt of the silk company for which the renewal notes were given, and the indorsers were still signing without consideration to themselves in order to lend credit to the principal debtor.

The position that the note was "accepted" by the bank for the accommodation of defendant within the meaning of section 115, subd. 3 (Code W. Va. 1931, 46-7-27, subd. (c) of the Negotiable Instruments Law is clearly unsound. The word "accepted" is used in that section in its technical sense and means, with relation to a bill of exchange, the "signification by the drawee of his assent to the order of the drawer" (N. I. L. § 132 [Code W. Va. 1931, 46-10-1]). It has no reference to loans upon, or discount of, promissory notes.

We have carefully considered the cases of Fosdick v. Government Mineral Springs Hotel Co., 115 Wash. 127, 196 P. 652, and Greenwade v. First Nat. Bank of Louisa, 240 Ky. 60, 41 S.W.(2d) 369, upon which the receiver relies. In the Fosdick Case, we think that the court has misinterpreted the meaning of "accepted" as used in the statute; and we cannot follow its reasoning to the effect that a bank which discounts a note for an insolvent maker is to be held to have "accepted" it for the accommodation of the indorsers. For an illuminating comment on this decision, see Brannan, Negotiable Instruments Law (4th Ed.) p. 716. The same may be said of the reasoning in the Greenwade Case, with the added observation that in that case the court rested its decision primarily on the ground that the evidence supported the finding as to waiver made by the chancellor in the court below. The case of Dankmer v. Wheeling Printing Co., 103 W. Va. 40, 136 S. E. 690, also relied upon by the receiver, is not remotely in point. The decision there was merely that it was error to exclude evidence offered for the purpose of showing that the note sued on had been executed for the accommodation of the persons appearing thereon as indorsers. It is, of course, well settled that such indorsers are the primary debtors, and that presentment and notice of dishonor are not necessary to charge them.

Some confusion in thinking arises because the indorsers here were irregular indorsers.

8 C. J. 74. There was much conflict of authority, prior to the Negotiable Instruments Law, as to the nature of the contract into which such indorsers had entered and what was necessary in order to charge them. See 8 C. J. 74, and cases there cited. The Negotiable Instruments Law has settled this matter in the states where it is applicable, however, by providing that such irregular indorsers are liable as ordinary indorsers in accordance with the rules prescribed in section 64, subdivision 2 of which (Code W. Va. 1931, 46-5-5, subd. (b)), is applicable here.

With regard to the demand made upon defendant, we do not think that a mere demand, with nothing else, was sufficient to fix his liability. Since the note was a demand note, demand within a reasonable time was necessary to fix the liability of the indorsers, as well as of the maker, unless, of course, this requirement was in some manner waived; and ordinarily it is for the jury to say whether demand was made within a reasonable time. Murray v. Third Nat. Bank of St. Louis, supra (C. C. A. 6th) 234 F. 481; Davis Nat. Bank v. Kight, 86 W. Va. 319, 103 S. E. 482. As the note was payable at the bank, it was sufficient that the demand for payment be made there. N. I. L. § 73 (Code W. Va. 1931, 46-6-4); Davis Nat. Bank v. Kight, supra. But the mere presence of the paper in the bank was not sufficient presentment and demand to fix the liability of indorsers, as would be true in the case of paper payable on a specific date. See notes 11 A. L. R. at page 976, 50 A. L. R. 1201 and Bank of United States v. Smith, 11 Wheat. 173, 175, 6 L. Ed. 443; Bank of United States v. Carneal, 2 Pet. 543, 549, 7 L. Ed. 513. We think that the rule with respect to demand paper held by the bank at which it is made payable, is that, to fix liability, the bank must take some unequivocal action showing that it elects to exercise the right to declare the paper due and collect it. National Hudson River Bank v. Kinderhook & H. Ry. Co., 17 App. Div. 232, 45 N. Y. S. 588, affirmed National Hudson River Bank v. Moffett, 162 N. Y. 623, 57 N. E. 1118. Such action was taken by the receiver, according to his testimony, when, in the bank and in the presence of the defendant, he declared the note due and called on defendant to pay it. This was an unequivocal act, performed at the place where the note was payable, showing that plaintiff demanded payment; and it at the same time gave notice to defendant that the note had been dishonored and that plaintiff looked to him for payment. As stated, however, the testimony of plaintiff on this point was contradicted; and the instruction of which complaint is made did not present to the jury the question raised by the contradiction, nor the question as to reasonable time.

On the question of waiver, there is evidence on the part of plaintiff, contradicted however by the defendant, that upon plaintiff's demanding payment of him, defendant asked and was given time to arrange payment. If this is true, it was a waiver of presentment and demand upon the maker and of any further notice of dishonor. Dillon v. Bron, 96 Kan. 189, 150 P. 553; Moll v. Roth Co., 77 Or. 593, 152 P. 235; Kuhl v. Schlichtemeier (C. C. A. 8th) 14 F.(2d) 593; Washington Horse Exch. Co. v. Bonner, 180 N. C. 20, 103 S. E. 907. But this, as well as any other matter showing waiver upon which plaintiff may rely, is a matter for the jury to pass on under proper instructions from the court. The mere fact that the defendant was a director of the bank would not amount to a waiver of his rights as indorser (Case v. McKinnis, supra; Maynard Trust Co. v. Furbush, supra); but in this connection it should be said that, in passing upon whether demand for payment of the note was made within a reasonable time, or whether demand in what might otherwise be considered a reasonable time was waived (but not on the question as to whether there was a waiver of any demand), the jury might properly consider that the defendant was one of the directors of the bank who acquiesced in the renewal of the original loan over a period of more than three years, and that he allowed the bank without protest to hold the note sued on for the period of more than a year during which he remained a director after the last renewal, although he had learned some time before his resignation that the silk company had no assets with which to pay it. Linthicum v. Bagby, 131 Md. 644, 102 A. 997.

Because of the error in the instructions to the jury, we must grant a new trial. It is not necessary, therefore, to discuss the other matters embraced in the assignments of error. We feel that it is well to say, however, as the question may come up again on the retrial of the case, that we do not think that the affidavit filed with the Pennsylvania department of revenue was admissible to prove the financial condition of the company, nor that the insolvency of the company or the indorsers could be proved by the testimony of the receiver based merely upon inquiries which he had made. On the question of solvency or insolvency, general reputation is admissible in

a proper case. Wigmore on Evidence (2d Ed.) vol. 3, § 1623, p. 378. And an expert who has had opportunity to examine the facts may express an opinion on the question, if a proper basis is laid for his testimony. Wigmore on Evidence (2d Ed.) vol. 4, § 1959, and cases cited. But it is not permissible for one, even though he be an expert, to give an opinion on solvency or insolvency based, not upon an examination of facts and records, but upon mere hearsay. Freeman v. State, 108 Miss. 818, 67 So. 460; Fletcher, Cyclopedia Corporations, vol. 8, p. 8614.

The position of the defendant is not one which appeals to the conscience of the court; but it must be remembered that we are not passing upon any liability of the defendant arising out of his relationship as a director of the bank, and that the sole question before us is the application to the case of the Negotiable Instruments Law, which affects commercial transactions throughout the country. In applying such a statute it is of more than ordinary importance to remember that "hard cases are the quicksands of the law," and not, for the purpose of doing equity in the particular case, to give the statute an interpretation which will introduce confusion into a law which it is of the utmost importance to have free of ambiguity.

For the reasons stated, the judgment will be reversed, and the case will be remanded for a new trial.

Reversed.