# Marquardt's Estate.

*Negotiable instruments—Promissory notes—Endorsement—Presentment for payment—Waiver.*

1. A party may prove by oral testimony that at the time of the endorsement of a promisssory note, it was agreed that the endorser should be absolutely bound for the payment of it without the usual demand and notice; the contract to pay on condition that the usual demand and notice be given, which is implied from the endorsement of negotiable instruments, is liable to be changed on the appearance of circumstances inconsistent with it, whether those circumstances be shown orally or in writing.

2. Where subscriptions to the stock of a newly formed corporation were paid for in promissory notes, and in order that the corporation might realize thereon, the directors arranged to give a note made by one of their number to the order of another, and endorsed by the remaining directors, to the bank which discounted the stock subscription notes, as collateral security for the payment thereof at maturity, the bank or its assignee, upon the default in payment of a stock subscription note, was not required to present the collateral note to the maker for payment before it could have recourse to the other endorsers, but was entitled immediately to proceed against the endorsers or any of them at its option. In such case the endorsers were not sureties for the maker of the note, but for the corporation in its undertaking with the bank.

Argued May 4, 1915. Appeal by Charles A. Smith and L. H. Syphard, from decree of O. C. Schuylkill Co., July T., 1914, No. 31, dismissing exceptions to adjudication, in Estate of William L. Marquardt, Deceased. Before BROWN, C. J., MESTREZAT, ELKIN, STEWART and FRAZER, JJ. Reversed.

Exceptions to adjudication. Before WILHELM, P. J.

The opinion of the Supreme Court states the facts.

The court dismissed the exceptions. Charles H. Smith and L. H. Syphard appealed.

*Error assigned* was in dismissing the exceptions.

*Henry D. Green,* with him *Edmund D. Smith,* for appellants.—The note endorsed by the directors did not come into the hands of the bank for discount as a negotiable note payable on demand; it disclosed only a part of the contract, which must be considered and interpreted in connection with other facts appearing by the uncontradicted evidence: McMillin v. Titus, 222 Pa. 500; Gillespie v. Iseman, 210 Pa. 1; Collison v. Philadelphia Company, 233 Pa. 350.

*Frank Jacobs,* with him *Charles E. Berger,* for appellees.—The note was commercial paper; it was not presented for payment when due, or within a reasonable time thereafter and the endorsers were therefore discharged: Patterson v. Todd & Lemon, 18 Pa. 426; Tyler v. Young, 30 Pa. 143; First National Bank v. McBride, 230 Pa. 261; Commercial National Bank of Syracuse v. Zimmerman, 185 N. Y. 210, (77 N. E. Repr. 1020).

OPINION BY MR. JUSTICE STEWART, October 4, 1915:

The Corporation Funding and Finance Company was chartered under the laws of this State. When it was chartered, or for what purposes, we are not informed; neither do we know whether it still exists. Information with respect to some of these details, while not essential in our present inquiry, might have proved helpful in enabling us to understand more readily the relation of the several parties to the transaction out of which the controversy arises. This much we know: about the year 1911 the corporation was marketing its capital stock to a very considerable amount, and was accepting in payment for the stock sold the promissory notes of the in-

dividual purchasers, instead of cash, with the result, that in the end it had too many notes and too little cash for the conduct of its business, whatever that was. To relieve this situation the corporation appealed to a number of banks to have these stock notes discounted. In order to accomplish this, the president and directors of the corporation agreed to lend their individual credit in this way: they were to execute a number of notes of like import, each in the sum of $5,000.00 payable on demand, drawn by one of their number and payable to the order of E. S. Snider, also a director as well as president, endorsed by Snider and each of the other fifteen directors; these notes to be delivered to the president with authority to pledge them as collateral security to the banks discounting the stock notes. This project was carried out as originally designed. We have here to do with but one of these notes, that pledged with the Blue Ball National Bank as collateral to nine of the stock notes it had discounted, amounting in the aggregate to $8,000. The collateral note pledged with this bank read as follows:

"$5,000.00                    Reading, Pa., Oct. 3, 1911.

On demand......after date I promise to pay to the order of E. S. Snider Five Thousand Dollars, at Reading National Bank, Reading, Pa., without defalcation, for value received."

(Signed)        GEORGE B. MAUSER.

It was endorsed by the payee Snider and by all the directors, including W. L. Marquardt whose estate—he having since died, is here sought to be charged. Of the stock notes discounted by this bank all were sooner or later paid except a note of C. G. Gross. The claim here made is for the amount of this note with interest, and certain costs incurred in the discount, amounting in all to $2,440.13. Claim is presented by these appellants to whom the Blue Ball National Bank, some fourteen months after default made on the Gross note, assigned that note together with the collateral note, they having

paid the bank's demand in full; and it is urged against the estate of one of the endorsers of the collateral note whose estate is now for distribution. The claim was rejected by the auditing judge on grounds to which we shall later refer, and this appeal follows.

The bona fides of the transaction between the appellants and the Blue Ball National Bank by which the former became the owners of the Gross note and the collateral is not questioned, and it results that whatever right, title or interest the bank had in either passed to the appellants, neither more nor less. It becomes a question then what were the bank's rights in this collateral when it assigned to the appellants? Could the bank while the owner of both notes have sustained a claim against an endorser on the collateral note for the amount defaulted on the Gross note? Unquestionably it could, except as by some act of omission or commission on its part the collateral pledge had been released or discharged from liability. Both notes were past due when they were assigned to the appellants, the Gross note for more than a year, which was more than a reasonable time in which to make demand for payment of the collateral note, if demand with respect to it was required. We have no concern with the Gross note, since there was endorsed upon it an express waiver of notice by the endorser, the Corporation Funding and Finance Company. No demand had been made for payment of the collateral note, and it is claimed that as a result the endorsers thereon were discharged from liability. The learned auditing judge adopted this view and accordingly disallowed the claim.

If this collateral note were what on its face it purports to be, a negotiable paper made and accepted in due course, there could be no answer to the objection urged. But any such assumption goes wide of the mark when we consider the object and purpose of the note, and the relation of the parties whose names appear thereon to such object and purpose and to each other, in connec-

tion therewith.  The note represented no existing indebtedness as between the parties to it; the drawer owed nothing to the drawee; the latter received nothing from his endorsee, nor did any subsequent endorser from any prior endorser.  All the parties to the note were directors of a corporation which could realize upon the securities it held only as the directors would lend their individual credit collaterally.  This the directors agreed to do, and the note in question was joined in by them to accomplish this one end.  To apply the law merchant to such a note, given under such circumstances, would effect results not only never contemplated but unjust and inequitable in the extreme.  It would give to any endorser who might be compelled to pay recourse upon all prior endorsers, who in their turn might cast the ultimate liability upon a drawer who is without other interest in the transaction than was common to all.  Certainly the note was not given with the understanding that the liability of the several parties was to be measured by any such rule.  It will not be pretended for a moment that mutual responsibility did not here exist in case of loss.  That such was the legal relation as between the parties is abundantly shown by the case of Slaymaker v. Gundaker, 10 S. & R. 75.  In that case the directors of a turnpike company become drawer and endorsers of a note on which the money was borrowed for the use of the company.  One of the questions was, in what relation did the drawer and endorsers stand toward each other? was there any responsibility between them in case of loss, supposing that there was no express agreement to that purpose?  In the opinion filed by TILGHMAN, C. J., this was the answer given, "In considering these questions, it is always to be kept in view, that the money was borrowed for the use of the turnpike company, and applied to the payment of its debts. The drawer and endorsers of the note of November, 1813, therefore, were, with respect to each other, in the nature of securities for the company.  And as such there can

be no doubt that in the absence of a special agreement there existed between them a mutual responsibility in case of loss.    The principle of contribution arises from the nature of their situation."

If such was the legal relation of the parties to each other, it is wholly immaterial that on the note itself one stood as maker, another as payee, and others as endorsers.    The measure of liability as between themselves was unaffected by any such circumstance.    Notice of dishonor is only required when it is necessary to preserve recourse to antecedent parties.    In this case failure to make demand and notice effected no change whatever, not even the slightest, in the liability of the several parties.    No one of the several endorsers could have had recourse to the maker or other endorser, except for contribution, and this right in no wise depended on a demand and notice having been given.    The law of the case is thus stated by Mr. Justice Lowrie in Barclay v. Weaver, 19 Pa. 396, 400:

"May a party prove by oral testimony, that at the time of the endorsement of a promissory note it was agreed that the endorser should be absolutely bound for the payment of it, without the usual demand and notice? This was answered in the negative by the court below on the principle that oral testimony cannot be heard to vary the terms of a written contract.    The error consists in the assumption that the law regards an endorsement as a written contract to pay on condition that the usual demand be made and notice given.    It is not so. For where the endorser is himself the real debtor, as in the case of accommodation notes and bills; or has an assignment of all the property of the maker as security for his endorsement; or where he can have no remedy against the maker; or in the case of the drawer of a bill of exchange, where the drawee is, and during the currency of the bill continues to be, without funds of the drawer; and in many other such cases demand and notice are not necessary; and this circumstance may be

proven by oral testimony. The reason is, that in such case, demand and notice can be of no use, and therefore the law does not require them. The most, therefore, that can be said of an endorsement of negotiable paper is, that from it there is implied a contract to pay, on condition of the usual demand and notice; and this implication is liable to be changed on the appearance of circumstances inconsistent with it, whether those circumstances be shown orally or in writing."

Notwithstanding the form of the note would indicate otherwise, the responsibility of the parties here was mutual, and they each and all stood as sureties for the Corporation Funding and Finance Company in its undertaking with the bank. Such relation never requires demand and notice. This then was the situation when the bank assigned the collateral note to the appellants; the bank had a right to enforce its collateral as against either or all of the parties to it. To this right appellants succeeded, and it is not pretended that by any act of theirs this right was forfeited. It follows that it was error to reject the claim and the order so made must be reversed. It is now so ordered and distribution is directed in accordance with the views so expressed.