## Cancelmo's Estate.

*Robert P. Shick,* for exceptions.

*H. Crowell Pepper* and *Ladner & Ladner,* contra.

THOMPSON, J.—Decedent died Jan. 15, 1927, and the exceptions before us relate to the action of the Auditing Judge in rejecting the claim of Citizens Bank and Trust Company of Tampa, Florida, against the decedent for $35,000, with interest from June 15, 1927, made under the following written agreement:

"Know All Men by These Presents: That for and in consideration of the sum of One ($1.00) Dollar to each of us in hand paid by the Citizens Bank.

and Trust Company, of Tampa, Florida, a corporation, the receipt whereof is hereby acknowledged, and in further consideration that the loans and advances hereinafter referred to are being and are to be made at our request, we, the undersigned stockholders and officers of the Growers Sales Company, Inc., a corporation under the laws of the State of Florida, do, jointly and severally, hereby guarantee to the said Citizens Bank and Trust Company the payment at maturity of any and all sums which the said Citizens Bank and Trust Company may lend or advance to the said Growers Sales Company or which the Growers Sales Company [may in any way owe to the Citizens Bank and Trust Company] by reason of indorsements, acceptances, overdrafts, drafts, or in any other way whatever, up to and not exceeding the sum of Thirty-five Thousand ($35,000.00). It being understood that this Guarantee is a continuing Guarantee *covering all sums borrowed prior to May 31st, 1927*, and is to guarantee to the Citizens Bank and Trust Company the payment at maturity of any indebtedness which said Growers Sales Company may owe to said bank, but not to exceed at any time the said sum of Thirty-five Thousand ($35,000.00) Dollars.

"In Witness Whereof, we have hereunto set our hands and seals on this the —— day of August, 1926.

| "O. C. Stewart | (Seal) | "C. M. Bly | (Seal) |
| L. C. Edward | (Seal) | A. Cancelmo, Phila. | |
| L. M. Morrow | (Seal) | T. J. Cancelmo | (Seal) |
| L. J. Lippman | (Seal) | F. E. Nellis & Co. | |
| J. & C. Lippman & Co., N. Y. | | F. E. Nellis (Seal) | Chicago |
| | | | (Seal)" |

We have underlined [italicized] the above as indicating an interlineation in the original agreement, which the uncontradicted testimony shows was inserted before signing.

The Growers Sales Company, a Florida corporation, was engaged in the business of buying and packing fruit, and desired to borrow some money from the claimant bank, who demanded as a condition precedent to any loans that the Growers Sales Company should give them collateral, or a guarantee that the notes would be paid, in response to which demand the above guarantee was given, the signers of the same being officers and stockholders of the Growers Sales Company. On Aug. 18, 1926, the claimant bank loaned the Growers Sales Company the sum of $35,000, taking one note for $25,000 and one note for $10,000, both dated Aug. 18, 1926, and maturing Nov. 16, 1926. These notes were not paid in cash at maturity, but were renewed by new notes given for the same amount maturing Feb. 15, 1927. These, in turn, were renewed by new notes maturing April 15, 1927. These, in turn, were renewed on April 15, 1927, by new notes maturing June 15, 1927, which were also not paid in cash, and are the notes upon which the claim is made.

The Auditing Judge held that the renewal of the notes in November, 1926, was such an extension of time granted the debtor as would relieve the sureties without their consent thereto. We are of the opinion that this ruling was error, as these are not the notes upon which claim is made. The adjudication and briefs discuss the legal proposition that the giving of time to the debtor without the consent of the surety discharges the surety. We do not dispute this proposition of law, but are of the opinion that the same has no application to the facts of this case. This is not a case of commercial paper, but one of suretyship: Quaker City National Bank *v.* O'Callahan, 95 Pa. Superior Ct. 69.

We are of the opinion that the principle laid down in the case of Marquardt's Estate, 251 Pa. 73, to wit, that the defendants were sureties and not endorsers, is applicable to the case under consideration. In that case subscribers to the stock of a corporation gave their notes for the amounts of their subscriptions, and the officers of the corporation took these notes to the bank for discount, which the bank refused to do unless the officers became personally responsible. Thereupon one of the directors drew a note to the order of another director, which was endorsed by each of the other fifteen directors. Upon the delivery of this note to the bank, the bank discounted the notes given for stock subscriptions, one of which was not paid. Fourteen months thereafter, without presentation or protest, a suit was started against the estate of one of the deceased endorsers, and the defense was that as an endorser they were entitled to have the notes presented for payment and notice of non-payment given, which not being done relieved the endorser. Mr. Justice Stewart, at page 76, said:

"If this collateral note were what on its face it purports to be, a negotiable paper made and accepted in due course, there could be no answer to the objection urged. But any such assumption goes wide of the mark when we consider the object and purpose of the note, and the relation of the parties whose names appear thereon to such object and purpose and to each other in connection therewith. The note represented no existing indebtedness as between the parties to it; the drawer owed nothing to the drawee; the latter received nothing from his endorsee, nor did any subsequent endorser from any prior endorser. All the parties to the note were directors of a corporation which could realize upon the securities it held only as the directors would lend their individual credit collaterally. This the directors agreed to do, and the note in question was joined in by them to accomplish this one end. To apply the law merchant to such a note, given under such circumstances, would effect results not only never contemplated but unjust and inequitable in the extreme."

The principle above announced was applied under a different state of facts in Friedman v. Maltinsky, 260 Pa. 312, in which Marquardt's Estate, *supra*, was cited with approval.

When the above guarantee was signed, no money had been loaned by the claimant bank to the Growers Sales Company, and, therefore, there was no particular maturity date for any indebtedness when the sureties signed the above agreement. The question of the time of repayment of whatever sums the bank might loan to the sales company was left entirely within their judgment and discretion, and they could have made the maturity date June 15, 1927, if they so desired. The sureties were not to be consulted, nor were they concerned. All that the sureties were concerned about was that the amount loaned by the bank to the sales company should not exceed $35,000, and should be loaned before May 31, 1927, and if, when the first loan was made in August, 1926, maturing in November, the bank and the sales company agreed that the maturity in November should be changed to February, and so on, it was within the letter and spirit of the agreement, and was not any concern of the sureties.

The claim should have been allowed for another reason, which has nothing to do with extensions of time, and that is the concluding sentence in the guarantee, as follows:

"It being understood that this Guarantee is a continuing Guarantee covering all sums borrowed prior to May 31, 1927, and is to guarantee to the Citizens Bank and Trust Company the payment at maturity of *any* indebtedness

which said Growers Sales Company may owe to said Bank, but not to exceed at any time the said sum of Thirty-five Thousand ($35,000) dollars."

We have underscored the word "any," as above, in order to emphasize the fact that the guarantee relates to any indebtedness prior to May 31, 1927, and not exceeding the sum of $35,000.

It will thus be seen that the sales company was indebted to the bank in April, 1927, in the amount of $35,000, maturing June 15, 1927, and it has not been repaid. This is within the limit of the amount and time fixed in the guarantee, so that we then have a case where extension of time does not enter into its consideration.

Under the above quoted sentence of the guarantee, the signers agreed to pay to the bank any sums not exceeding $35,000, which the bank loaned to the Growers Sales Company. As it is not controverted that the bank loaned the sales company $35,000, we see no reason why the plain guarantee of the signers of the agreement should not be enforced against them, and this without considering whether or not any extension of time had been given in the earlier transactions.

The notes upon which claim is made were dated April 15, 1927, and were within the time limit of the above contract, and did not exceed the amount set forth in the contract. This being the fact, the decedent's estate is liable, irrespective of what had been the relations of the bank and the sales company as to loans prior to April 15, 1927. At that date the sales company owed the bank $35,000, which is evidenced by the notes upon which claim is made, and, therefore, there is no question under this view of any extension of time whatever.

There is no evidence to support the first exception, subdivision (b), the second exception and the third exception, and they are, therefore, dismissed.

The first exception, subdivisions (a) and (c), and the fourth, fifth, sixth and seventh exceptions are sustained, and the claim of the Citizens Bank and Trust Company of Tampa, Florida, is allowed in the sum of $35,000, with interest from June 15, 1927, and the adjudication is modified accordingly, and as so modified is confirmed absolutely.

By writing filed, it is suggested that the Citizens Bank and Trust Company is insolvent, and that C. L. Knight was appointed liquidator thereof by the Circuit Court of Hillsborough County, Florida, on Aug. 7, 1929.

[The foregoing opinion was prepared by Judge Thompson before his death, and has been adopted by the majority of the court, and is now filed by me at its direction. STEARNE, J., July 21, 1930.]

LAMORELLE, P. J., dissenting.—The agreement recites a consideration of one dollar and that "loans are being made and are to be made at our request;" guarantees payment at maturity of "any and all sums which the said . . . . Company may lend;" and provides that it is a continuing guarantee of "all sums borrowed prior to May 31, 1927, and is to guarantee . . . the payment at maturity of any indebtedness which said . . . Company may owe to said bank."

The words "payment at maturity" occur in the fore and latter part of the agreement. Giving a renewal note is not payment; as respects the guarantor, it is merely extending the time of payment. But, in answer to this, it is said, considering the agreement as a whole, the bank could have fixed May 31, 1927, as the date of maturity; and, consequently, notice of renewal was not necessary to be given to the guarantors.

736

It is an elementary principle of law that words or combinations of words must be given their customary and ordinary meaning, and this rule must be applied, unless a repugnancy between them and other parts of the document would result, or where *ex necessitate* a more restricted or enlarged meaning must be ascribed to them. In my opinion, full effect can be given to the words "payment at maturity," and if this be done, it will not in any way derogate from the other language of the document. The signers of the agreement contemplated that a number of loans might be made during the period covered by it. They were willing to guarantee the payment of the respective loans at their respective maturities. They had in mind that the total aggregate of the loans might exceed $35,000, but that was a matter of indifference to them, provided that the total unmatured indebtedness never, at any time, exceeded that sum. They contemplated the possibility of loans being paid at maturity during the existence of the agreement; and if at the termination of the agreement the unmatured loans did not exceed $35,000, they were willing to assume responsibility for the payment of the indebtedness.

It is to be noted that the agreement recites that "loans are being made and are to be made at our request." The words "are being made," in my opinion, refer to loans being made contemporaneously with the signing of the agreement, and the amounts and the maturities of which were then known; and the words "are to be made," to future loans. The agreement was signed on Aug. —, 1926. The original notes bear date Aug. 16, 1926. The logical inference is that these were the loans that were intended to be comprehended by the language "are being made." It follows, if the date of the maturity of the original obligation was fixed and known, that a more distant date could not be substituted by an agreement between the bank and the company without the consent of the guarantors.

In my opinion, the exceptions should be dismissed.