## In re REDMOND.

No. 18646.

District Court, E. D. Pennsylvania.
Aug. 7, 1936.

Charles G. Gartling, of Philadelphia, Pa., for claimant.

Jacob K. Miller, of Philadelphia, Pa., for trustee.

MARIS, District Judge.

Margery A. Redmond has filed a petition to review the order of the referee disallowing her claim filed against the bankrupt estate on May 31, 1935, in the sum of $44,714.72. The consideration stated in the proof of claim was "contingent liability of bankrupt, by reason of endorsement of note of Milo Bar Bell Co. Inc. dated March 29, 1933." The trustee in bankruptcy objected to the claim and filed a petition, later amended, for its reconsideration and rejection. The objection pressed by him was that the claim was based on a demand note

on which the bankrupt was indorser, and, no demand having been made for more than two years, the claim was not provable. The learned referee, after finding the facts and considering the law applicable thereto, came to the conclusion that the claim must be disallowed. With his conclusion we agree.

The facts, briefly stated, were that Daniel G. Redmond, the bankrupt, was the sole owner of the Milo Bar Bell Company, Inc., a corporation, which was the maker of the note. He was also engaged as an individual in a closely associated business operated under the trade-name Milo Publishing Company. These two businesses were managed and operated by the bankrupt, in the one case as officer and in the other case as owner. Although their funds were somewhat mingled and the bankrupt looked upon them both as his own property, nevertheless he considered and treated the two businesses as separate and apart from each other.

The Milo Bar Bell Company, Inc., had an indebtedness to the Fairmount Foundry Company which in 1933 amounted to upwards of $41,000, and which had been contracted in the purchase of material for the use of the company. At that time Redmond and the corporation had two other creditors, the Olney Bank & Trust Company, whose claim was partly against one and partly against the other, and the Canfield Paper Company, whose claim was entirely against Redmond as owner of the publishing business. The claims of these creditors were being pressed, and Redmond arranged to give them notes for the amounts due. In the case of the Fairmount Foundry Company a settlement was made by Redmond's father, who was a stockholder of that company, under which the indebtedness was taken over by his mother, the present claimant. The note claimed on was then given to her. It was a demand note payable to Margery A. Redmond, and it was executed by Redmond as treasurer of Milo Bar Bell Company, Inc., and indorsed by him individually. At the same time notes were given to the Olney Bank & Trust Company executed by him for the corporation, as well as for himself individually, and in the case of the Canfield Paper Company Redmond gave his individual note and indorsed it as treasurer of the Milo Bar Bell Company, Inc. When these notes were given, the business of the corporation, as well as the publishing business, was in poor condition and getting worse.

The note given to the present claimant was stated to be payable at 247 South Forty-Sixth street, Philadelphia, which appears to be her residence. The referee found that the note was given in settlement of the indebtedness of the Milo Bar Bell Company, Inc., to the Fairmount Foundry Company, and that Redmond indorsed it because his father insisted that he should do so to protect his mother in taking over this indebtedness.

■ The claimant has strongly urged that, her claim having been originally allowed, the proof of claim she filed was prima facie evidence in support of it, and that the burden was therefore on the trustee by proper evidence to support his objections, which it is urged he failed to do. It is undoubtedly true that the proof of claim filed by a claimant in bankruptcy is some evidence of the claim, even when it is objected to and denied. Whitney v. Dresser, 200 U.S. 532, 26 S.Ct. 316, 50 L. Ed. 584; In re Roanoke Furnace Co. (D. C.) 152 F. 846. But it can only be evidence of the facts alleged in the claim. In the present case the claimant alleged that there was a contingent liability on the bankrupt by reason of his indorsement of a note. There was no allegation that the contingency, which could only have been presentment and dishonor, had happened. In the absence of such an allegation, the burden was on the claimant to establish by competent evidence facts showing that the contingency had arisen and the trustee had the right to take advantage of her failure to do so.

■ The uncontradicted evidence showed, however, and the referee found, that no presentment or demand for the payment of the note had been made upon either the maker or the indorser up to the date of bankruptcy, a period of more than two years. The referee found that this period was an unreasonable time to delay presentment. With this finding we agree. Murray v. Grover, 80 Pa.Super. 56. It therefore follows that the right of Mrs. Redmond to claim against the bankrupt as indorser is barred unless failure to make presentment and demand may legally be excused.

■■ The claimant urges that presentment and demand were unnecessary in this case for several reasons. The first is that, since

the note was payable at the residence of the payee, Mrs. Redmond, her possession of it at the place of payment constituted a sufficient presentment, and no formal presentment was therefore necessary. It has been held in the case of a note payable at a bank on a specific date that the presence of the note in the bank on that date is a sufficient presentment to fix the liability of indorsers. This, however, is not true with respect to a demand note. In the case of such a note it is necessary in order to fix liability that the holder who has it in his possession at the place designated for payment should take some unequivocal action showing that he elects to exercise his right to declare the note due and to collect it. National Hudson River Bank v. Kinderhook & H. Ry. Co., 17 App.Div. 232, 45 N.Y.S. 588, affirmed National Hudson River Bank v. Moffett, 162 N.Y. 623, 57 N.E. 1118; Lucas v. Swan (C.C.A.) 67 F.(2d) 106, 90 A.L.R. 210. There was no evidence that Mrs. Redmond took any action in respect to the note here in controversy. Consequently her failure to present it within a reasonable time was not excused by the fact that she held it in her possession at the place specified in the note for its payment during the entire period intervening between the execution of the note and the bankruptcy of the indorser.

 Another ground urged by the claimant to excuse her failure to present the note for payment was that the note was in reality made for the indorser's accommodation, and he had no reason to expect that it would be paid if presented, so that presentment was excused by sections 80 and 115 of the Act relating to Negotiable Instruments approved May 16, 1901 (56 P.S. Pa. §§ 181, 238). The undisputed evidence showed, however, and the referee found, that the note was given in settlement of a debt which was solely that of the maker, the Milo Bar Bell Company, Inc., and that it was indorsed by the bankrupt in order to make possible the settlement of this indebtedness of the company in which he was interested as stockholder, director, and officer. This, however, was not such an interest as constitutes one an accommodated indorser within the meaning of the Negotiable Instruments Act (56 P.S.Pa. § 66). McDonald v. Luckenbach (C.C.A.) 170 F. 434; Grandison v. Robertson (C.C.A.) 231 F. 785. To constitute one a party for whose accommodation a note is given within these provisions of the law, the indorser must be the one to whom credit is loaned and not the one who loans his credit. There can be no doubt in this case that Redmond loaned his credit to the corporation by his indorsement in order to enable it to make the settlement of its indebtedness which was necessary if it was to continue in business. He received no direct pecuniary advantage from his indorsement, and the removal of a possible threat to his individual publishing business, although strongly urged as such by the claimant, was not in our opinion such a consideration as would constitute him an accommodated party.

The claimant also urges that Redmond when he indorsed the note became surety for the maker and cites In re Marquardt's Estate, 251 Pa. 73, 95 A. 917, in support of her position. That case is, however, clearly distinguishable. There the directors of a corporation, desiring to raise money for their corporation by discount of certain notes held by it, agreed with a bank to give it as collateral security their individual notes to be drawn by one of their number payable to another of them and indorsed by him and each of the other directors. It was held in that case that demand and notice were unnecessary to hold the indorsers. The court said (251 Pa. 73, at pages 76 and 77, 95 A. 917, 918): "If this collateral note were what on its face it purports to be, a negotiable paper made and accepted in due course, there could be no answer to the objection urged. But any such assumption goes wide of the mark when we consider the object and purpose of the note, and the relation of the parties whose names appear thereon to such object and purpose and to each other in connection therewith. The note represented no existing indebtedness as between the parties to it; the drawer owed nothing to the drawee; the latter received nothing from his indorsee, nor did any subsequent indorser from any prior indorser. All the parties to the note were directors of a corporation which could realize upon the securities it held only as the directors would lend their individual credit collaterally. This the directors agreed to do, and the note in question was joined in by them to accomplish this one end. To apply the law merchant to such a note, given under such circumstances, would effect results not only never contemplated, but unjust and inequitable in the extreme. It would give to any indorser who might be compelled to pay recourse

upon all prior indorsers, who in their turn might cast the ultimate liability upon a drawer who is without other interest in the transaction than was common to all. Certainly the note was not given with the understanding that the liability of the several parties was to be measured by any such rule. It will not be pretended for a moment that mutual responsibility did not here exist in case of loss."

The court, therefore, held that the responsibility of the parties was mutual, and they each and all stood as sureties for the corporation in which they were interested and for whose discounted notes the notes made and indorsed by them were given.

In the case now before us, however, no situation even remotely resembling that which appeared in Re Marquardt's Estate exists. Here there was no mutual responsibility whatever; on the contrary, it definitely appears that the debt for which the note was given was the sole responsibility of the maker, while Redmond was merely an accommodation endorser who lent his credit to the company in which he was interested without any direct consideration to himself. Friedman v. Maltinsky, 260 Pa. 312, 103 A. 731; Helfrich v. Snyder, 269 Pa. 527, 112 A. 749, and Greenwald v. Weinberg, 102 Pa.Super. 485, 157 A. 351, also cited by the claimant, were all cases of suits for contribution between indorsers jointly liable and all standing upon a common basis and may be distinguished upon that ground.

The claimant argues that Redmond admitted under examination by the referee that he was surety and that the referee erred in striking out this testimony. We believe that it was properly stricken out, but, even if admitted, it stated but a conclusion of law which the witness was not competent to make and which had no value as against the facts of the indorsement and the circumstances surrounding it. These thoroughly disprove any such intention by Redmond, for they show that, in executing the notes which were given to each of the three creditors who were settled with at the time, he was careful to sign as maker only where he was personally liable for the indebtedness and to sign as indorser where the corporation was liable. This negatives the idea that he intended his indorsement to carry a primary liability, since in each case he did that which was necessary to establish his liability as primary or secondary under the facts and the rules laid down by the Negotiable Instruments Act.

Claimant also argues that, since Redmond was the owner of practically all of the stock of Milo Bar Bell Company, Inc., and operated the company's business as its executive officer, he and the company should be held in equity to be one, and consequently he should be held liable as maker of the note and not as an indorser entitled to presentment and notice of dishonor. We cannot assent to this proposition, however, since Redmond and the corporation were separate entities, each with separate assets and creditors, and their liabilities cannot be blended in any such manner.

The order of the referee is confirmed and the petition for review dismissed.